LOWDON et al. v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. December 31, 1906.)

No. 1,588.

1. CRIMINAL LAW—INDICTMENT—PLEA—FILING—TIME.

A plea attacking an indictment alleged that it had been found by a grand jury two of the members of which had been chosen from the bystanders, which had "greatly prejudiced defendant." The plea was not filed until after the indictment had been filed and entered, or until 17 days after defendant had returned to the state. The only excuse given for not interposing it sooner, was that defendant was not present when the grand jury was selected, but was absent, and remained absent from the state until a time later than the return of the indictment. *Held*, that the plea was not filed in time.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, § 643.]

2. SAME—TRIAL—ARGUMENT OF COUNSEL.

Where accused offered no evidence to prove his good character, and was therefore entitled to rely on a legal presumption that his character was good. it was prejudicial to accused for the prosecuting attorney, in making a strong appeal to the jury to assume that defendant's character was bad because of his failure to prove the contrary, defendant's objection thereto having been overruled, and the district attorney not having withdrawn the argument.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, §§ 1673, 1674.]

3. SAME.

Where, in a prosecution of certain bankers for violating the national bank act, one of defendants' attorneys in argument appealed to the jury saying: "Six of you cannot return a verdict, nor 11, but it takes 12 men to reach a verdict," the intent being to acquaint each juror with his power and responsibility. it was prejudicial error for the district attorney in reply to state that, if a juror decided that defendants were not guilty, when

149 F.—43

the juror returned home "his neighbors might conclude that the jingle of the broken bankers' unlawfully and ill gotten gold in his pocket" had influenced his action and decision.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, §§ 1676, 1680.]

In Error to the District Court of the United States for the Northern District of Texas.

Geo. E. Miller and S. P. Hardwicke (Matlock, Miller & Dycus and Hardwicke & Hardwicke, on the brief), for plaintiffs in error.

William H. Atwell, U. S. Atty.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge. The defendants, James G. Lowdon, president, and Otto W. Steffins, vice president, of the American National Bank of Abilene, Tex., were indicted in the court below for violations of section 5209 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 3494]. There were 31 counts in the indictment. The district attorney withdrew or dismissed 2 of the counts. Lowdon was found guilty on 16 counts, and Steffins on 6 counts. Judgment was entered on the verdict, and the defendants were sentenced to be confined in the penitentiary for a period of five years. They brought the case here on writ of error.

The indictment was returned and filed on March 21, 1906. Nineteen days afterwards, when the case was called for trial, the defendant Lowdon filed a plea in abatement. The substance of the plea was that of the regularly summoned grand jurors, only 15 were in attendance, whereupon the court ordered the marshal to summon two more grand jurors in order that the grand jury should be composed of 16 members. It is alleged in the plea that the marshal called two men who were in attendance on the court, and who had been summoned as petit jurors. As a reason for not interposing the plea sooner, it was stated:

"This defendant says that he was not present in said court at the time of the selection, summoning, and impaneling of the grand jury aforesaid, he then being absent from the state of Texas, and remained so absent from the state of Texas until a time later than the return of the said indictment."

The plea contained no averment of specific facts to show that the defendant had been prejudiced or injured by the selection of the two grand jurors in question. The general statement was made that the defendant had been "greatly prejudiced" by the improper and illegal selection, etc., but no fact was alleged showing injury, except that the grand jury so organized found the indictment. The government, by the district attorney, demurred to the plea, because it failed to show that the defendant was injured, and because it failed to show that the requisite number of jurors did not return the bill of indictment. The court sustained the demurrer, and this action of the court is assigned as error.

Section 808, Rev. St. U. S., c. 86, 13 Stat. 500 [U. S. Comp. St. 1901, p. 626], is as follows:

"Section 808. Number of grand jurors; completing jury. Every grand jury empaneled before any district or circuit court shall consist of not less

than sixteen nor more than twenty-three persons.. If of the persons summoned less than sixteen attend, they shall be placed on the grand jury, and the court shall order the marshal to summon, either immediately or for a day fixed, from the body of the district, and not from the by-standers, a sufficient number of persons to complete the grand jury. And whenever a challenge to a grand juror is allowed, and there are not in attendance other jurors sufficient to complete the grand jury, the court shall make a like order to the marshal to summon a sufficient number of persons for that purpose."

The contention of the defendant is that this statute was violated by the procedure, because the marshal completed the grand jury by summoning two bystanders. It does not appear in what terms the order of the court was made, or that any order was entered on the minutes. We do not think the plea makes a statement that calls for a construction of the statute. An objection of this kind should be made at the earliest day that the defendant has an opportunity to make it. The plea may be true, and yet the defendant may have delayed 17 days in filing it after his return to the state, and after the bill was filed and entered. In Agnew v. United States, 165 U. S. 36, 45, 17 Sup. Ct. 235, 41 L. Ed. 624, a delay of five days was noted in treating the plea as insufficient. In that case, it was also held that the general words, that the action complained of "tended to his (defendant's) prejudice," was not sufficient. Without considering whether the statements of the plea were otherwise sufficient, we hold that the demurrer was properly sustained on the authority of Agnew v. United States, supra.

On the trial of the case below, exceptions were taken by the defendants to certain arguments and statements made to the jury by the district attorney. For convenience of reference, these statements or arguments will be numbered 1 and 2. They are as follows:

"(1) Now, gentlemen, has a single man come upon this stand and told you about the character of Lowdon as to his honesty? That matter has been put in issue by these charges and this testimony here. Has one? No one; not one; not one! I concede you, my friends, that it is hard, but I am going to say it, it is a hard thing to say, but I ought to say it; that is what I am here for. I am here to prosecute this case, as I say, God Almighty being my helper, as fiercely and strongly as I may consider is fair. When that man is charged with an offense, or any other man, right at that instant his reputation comes in question, and he may support it by the testimony of his people as to its goodness. I could not put a witness on and show that it was not good, except as I have done by the testimony in this case. It is then passed up to him; it is his play. Another thing, you need not tell me that these five attorneys here—the best that could be gotten—strong men personally, and strong men mentally; you need not tell me that these attorneys overlooked any bets—to use the common expression. Don't you know that if he could have found any witness who would have testified to his good character he would have done so? But he brings not one! Not one. * * *

"(2) As Mr. Cunningham has said to you, that six men cannot return a verdict of guilty in this case, nor can eleven: that it is required that 12 men shall agree before these men can be convicted. In this connection I want to suggest to you, gentlemen of the jury, that I would hate to be the obstinate man on this jury who would hang out against a verdict of guilty with his fellows in a case like this, where a national banker is on trial for embezzlement, misapplication and abstraction of the property and funds of this bank, to the detriment of suffering depositors; because, when I returned home my friends and neighbors, who possibly are not versed and familiar with the various technicalities and intricacies of the law, might conclude that the jingle of the broken bankers' unlawfully and illy gotten gold in my pocket had influenced my action. Occupying the position I do, I can-

not do less than my whole duty in this case in the prosecution of these defendants, for fear that it might be said of me that I had received money in addition to my salary."

When each of the foregoing arguments was made to the jury by the district attorney, the cousel for the defendants made objection. The court overruled the objections, and permitted the district attorney to proceed with the argument, whereupon exceptions were duly reserved by the defendants. After the conclusion of the argument in the case, the defendants requested charges which, in effect, instructed the jury to disregard these arguments, the charges being properly framed to remove any improper influence that the arguments might have had upon the jury. The court declined to give each of these charges, and exceptions were again duly reserved. The bill of exceptions shows that the attorneys for the defense, in their arguments to the jury, had, without objection, made observations to which, it is claimed, the district attorney's remarks were intended to reply.

The chief function of the legal profession is the administration of justice. The duties of the bench and bar are, to this extent, alike. The purpose of both is to establish the truth, and to apply the law to it. To ascertain the truth is often difficult, and the united labor of the advocate and the judge often, it is feared, fails to accomplish the desired result. But the experience of all civilized countries shows that a trained body of men, advocates and judges, each class performing its respective duties, is required even to approximate success in the establishment of the truth. Forensic strife and the cross-examination of witnesses are the methods best adapted to the ascertainment of the truth. It is the duty of counsel to make the most of the case his client has given him. It is essential that all that is relevant to the case that can be said for each party in the determination of the fact and law should be heard. The very fullest freedom of speech, within the duty of his office, should be allowed to counsel. In addressing either court or jury, the advocate should be allowed to select and pursue his own line of argument, his own method of dealing with the evidence, and the application of the law to it. Every fact the testimony tends to prove, every inference he may think arises out of the testimony, the credibility of the witnesses, their intelligence, want of sense, or means of knowledge, are all legitimate subjects of discussion. Illustrations and analogies may be used, based on the testimony, history, science, literature, or current events. The court would never stop the advocate in his attempt to draw inferences, or to establish intention, from evidence that has been offered. Whether an inference of counsel is rightly drawn from the evidence is for the jury to determine. He may, of course, urge a fearless administration of the criminal law, and he may complain that juries are more inclined to acquit than to convict. On the other hand, for the defense, he may warn juries against harsh and hasty verdicts, and may invoke the mercies of the law. The field of legitimate speech and appeal is broad—broader than we can indicate here. But it is necessary to the proper administration of the law that there should be a limit to what the advocate is permitted to say to the jury. Cases are to be decided by

juries upon the evidence, and when the evidence is offered by witnesses, the witnesses are subject to cross-examination. A defendant should not be subjected to a trial on the unsworn statements of an attorney conducting the prosecution, even when such statements are relevant to the case, for he would by this procedure be debarred the right of cross-examination and be also deprived of the right of offering evidence in rebuttal. It is not within the legitimate province of counsel to state facts pertinent to the issue that are not in evidence; nor can he assume in argument that such facts are in the case when they are not. And counsel cannot be permitted to make a statement of facts, which, under the rules of evidence, would not be received if offered, the natural tendency of such facts being to influence the finding of the jury. To adopt any other view would enable the advocate to put before the jury for their consideration statements not tested by cross-examination and facts which the law excludes.

Having said this much in relation to the subject generally, we first consider an assignment of error made by Lowdon alone. He offered no evidence to prove his good character. He unquestionably had the right to rely on the legal presumption that his character was good. Mullen v. United States, 106 Fed. 892, 46 C. C. A. 22. The excerpt from the argument of the district attorney, numbered 1, is a strong appeal to the jury to presume that the character of Lowdon was bad because he failed to offer evidence that it was good. This was not only getting out of the record, but going contrary to the legal presumption to which the defendant was entitled. It was assuming that the defendant's failure to offer such evidence created a presumption that his character was bad. This was not a legitimate and proper argument, and, on objection being made, the trial court should have stopped the district attorney and should have taken steps to remove, as far as possible, its influence upon the jury. But it is urged on behalf of the government that, conceding that the argument was not legitimate, it does not constitute reversible error. It is true that in like cases where the court sustains the defendant's objection to the argument and the words are at once withdrawn, it is held that the injurious effect is removed, and the incident does not constitute ground for a new trial. Dunlop v. United States, 165 U. S. 486, 498, 17 Sup. Ct. 375, 41 L. Ed. 799; Wright v. United States, 108 Fed. 805, 48 C. C. A. 37; Kellogg v. United States, 103 Fed. 200, 43 C. C. A. 179. But in this instance the district attorney did not withdraw the argument, and was sustained in making it by the action of the trial court. The principle which secures to every one accused of crime a fair and impartial trial on the evidence adduced is violated when the court permits the district attorney, against objection, to comment in argument to the jury upon the failure of the defendant to offer evidence of his previous good character. McKnight v. United States, 97 Fed. 208, 38 C. C. A. 115; Bennett v. The State, 86 Ga. 401, 12 S. E. 806, 12 L. R. A. 449, 22 Am. St. Rep. 465; Davis v. The State, 138 Ind. 11, 37 N. E. 397; Fletcher v. The State, 49 Ind. 124, 19 Am. Rep. 673; Thompson v. The State, 92 Ga. 448, 17 S. E. 265; The People v. Evans, 72 Mich. 367, 40 N. W. 473.

The exceptions and assignments of error that relate to the second excerpt from the district attorney's argument were taken, and are made, by both of the defendants. One of the defendants' attorneys appealed to the jury, saying:

"Six of you cannot return a verdict, nor eleven, but it takes twelve men to reach a verdict."

The intention was evidently to acquaint each juror with his power and his responsibility. Counsel on either side have a right to appeal to the conscience, sympathy, or sense of justice of the individual juror in any fair and legitimate argument. Each juror acts, in a measure, on his own judgment and conscience, influenced and aided, of course, by the counsel, advice, memory, and experience of his fellow jurors. But if defendants' counsel should submit an unlawful argument, or improper appeal to the jury, his violation of law or ethics would not justify the prosecuting attorney in taking a like course. His remedy would be to ask the court to stop the defendants' attorney when he clearly departed from a legitimate line of argument, or to request instructions that would remove the harmful effect. If a departure from the field of legitimate argument by one side was sufficient excuse for the other side to pursue the same course, it would possibly lead to the trial of cases upon the assertions and statements of counsel, and not on the evidence adduced.

In the second excerpt from the district attorney's argument, he asserted, in effect, that if a juror decided that the defendants were not proved to be guilty, when he returned home, "the neighbors * * * might conclude that the jingle of the broken bankers' unlawfully and illy gotten gold" in his pocket had influenced his action and decision. The plain meaning was, if you decide to acquit, your neighbors will say you have been bribed with money—with the "illy gotten" money of the defendants. Although we acquit the learned district attorney of intending any threat, a juror unacquainted with criminal procedure might reasonably have concluded that he was warned against a probable charge of receiving a bribe or of conspiracy.

In the case of People v. Mull, 167 N. Y. 247, 60 N. E. 629, the court of last resort in New York reversed the judgment of the trial court on account of the argument of the prosecuting attorney, although the court said that the "evidence in the record was ample to sustain the verdict." The argument of the prosecuting attorney in that case was that "a failure to convict cannot fail to excite widespread comment and indignation among the whole body of citizens of this country." In his address, the attorney said:

"If there is a man who sits in those chairs that is willing to brand himself with suspicion by saying that Archie Mull did not commit this crime, my judgment of his character is not at all correct. * * * It is no wonder that your neighbors have concluded that the integrity and decency of this panel of jurors, instead of Archie Mull, is on trial here today."

The court held that this speech being permitted made it doubtful "whether the defendant had been fairly convicted," and the judgment was reversed.

In Williams v. United States, 168 U. S. 382, 18 Sup. Ct. 92, 42 L. Ed. 509, the defendant, an officer of the United States, was convicted of extortion in exacting moneys from Chinese immigrants for permission to land and remain in the United States. The defendant proposed to show by witnesses that, while he was acting in such official position, "there were more females sent back to China than ever were sent back before or after." The representative of the government objected to this evidence as irrelevant, saying in open court, and presumably in the hearing of the jury:

"No doubt, every Chinese woman who did not pay Williams was sent back."

The Supreme Court said:

"The observation made by the prosecuting attorney was, under the circumstances, highly improper, and not having been withdrawn, and the objections to it being overruled by the court, it tended to prejudice the rights of the accused to a fair and impartial trial."

In Hall v. United States, 150 U. S. 76, 14 Sup. Ct. 22, 37 L. Ed. 1003, the judgment of the trial court was reversed, because the district attorney was permitted to make an argument, against the objection of the defendant, not based on evidence, which tended to prejudice the jury against the defendant. We would not embarrass free discussion, so essential to the proper administration of the law. We would not regard many hasty and exaggerated expressions of attorneys made in the heat of debate, which are not expected to become factors in the formation of the verdict. We wish to follow established rules, and to avoid introducing another element of uncertainty in the trial of criminal cases by making a new precedent for the reversal of judgments. The difficulty of drawing a line between legitimate and improper arguments admonishes us that the trial judge often has a delicate and difficult task imposed on him. But, under the circumstances of this case, considering the character of the argument, the refusal of the trial judge to interfere at the time the objection was interposed, or to correct the probable effect of the argument by a subsequent instruction, and because it does not appear affirmatively to us that no injury was done to the defendants, we are constrained to hold that the judgment should be reversed, and a new trial granted to both defendants.

We do not think it necessary to decide other questions raised. Demurrers were filed to each count of the indictment, and they were all overruled. The learned district attorney says in his brief that "if the court should conclude that the demurrers to counts 5 and 6 should have been sustained because of alleged duplicities," there still remain 14 "unimpeached and unassailable counts." We concur in the view of the district attorney that there are a number of good counts in the indictment, and, in view of the fact that the defendants may not again be put on trial on any count which the district attorney may now deem insufficient, it seems useless to enter on the examination of the various assignments of error relating to the demurrers to the several counts.

The judgment of the Circuit Court is reversed, and the cause remanded for a new trial.