## UNITED STATES v. AMERICAN TOBACCO CO.

(District Court, W. D. Kentucky.   March 10, 1910.)

**1. GRAND JURY (§ 38*)—DELIBERATION—TAKING STENOGRAPHIC NOTES.**

The fact that during the investigation of a matter by a federal grand jury, in which an indictment was returned, the assistant district attorney, who was in the grand jury room, made stenographic notes of the testimony taken, and afterward while the investigation was still in progress read the same to the district attorney and also to a special agent and attorney for the government, who was in consultation with him, was not a violation of any legal rights of the accused, and does not constitute ground for abatement of the prosecution.

[Ed. Note.—For other cases, see Grand Jury, Cent. Dig. § 81; Dec. Dig. § 38.*]

**2. GRAND JURY (§ 39*)—MOTION IN ABATEMENT OF PROSECUTION—GROUNDS.**

An indictment for violation of the Interstate Commerce law is not invalid and the prosecution subject to abatement because a special agent and attorney for the Interstate Commerce Commission, who had investigated the matters out of which the indictment arose, was present at the office of the district attorney while the case was under investigation by the grand jury, was consulted by him, and advised as to the witnesses and documentary evidence to be presented.

[Ed. Note.—For other cases, see Grand Jury, Dec. Dig. § 39.*]

**3. CRIMINAL LAW (§ 279*)—PLEA IN ABATEMENT—TIME FOR FILING.**

A plea in abatement to an indictment, alleging matters of irregularity merely, which in a technical sense are dilatory, and which even if sustained do not finally dispose of the subject-matter of the indictment, must be presented with the greatest promptness; and such a plea, filed 19 days after service of process on the indictment and more than 2½ months after it was returned, and which contains no statement as to when the fact of the indictment or the matters alleged first became known to defendant, comes too late.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 643, 644; Dec. Dig. § 279.*]

**4. CRIMINAL LAW (§ 280*)—PLEA IN ABATEMENT—SUFFICIENCY.**

A plea in abatement to an indictment. alleging misconduct on the part of a witness before the grand jury, who was also a special agent and attorney for the Interstate Commerce Commission, in that while on the stand he stated his opinions as to the sufficiency of the evidence and argued its sufficiency, and alleging generally that defendant was prejudiced thereby, is not sufficiently specific to raise an issue.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 280.*]

The American Tobacco Company was indicted, and files a plea in abatement.   Plea overruled.

George Du Relle, Dist. Atty., for the United States.

J. Parker and Gibson, Marshall & Gibson, for defendant.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

EVANS, District Judge. The indictment charging the defendant with receiving rebates from a railroad company was returned by the grand jury on December 2, 1909. The process issued thereon was served February 4, 1910. On February 23d the defendant filed a duly verified plea in abatement, expressed as follows:

"Comes the defendant, the American Tobacco Company, and offers herein its plea in abatement of the indictment against it herein, and for cause thereof respectfully shows to the court and alleges the facts to be as follows. to wit: One S. H. Smith is a lawyer attached to, and in the service of, the Interstate Commerce Commission as special agent. Said commission, under the power granted it by law, sent its agent or agents to Louisville, Kentucky, the first of said agents being said S. H. Smith, who, with others, under instructions and powers given them, examined the books, records, vouchers, letters, and other papers of the Louisville, Henderson & St. Louis Railway Company to see if there had been any violation of any of the provisions of the interstate commerce law as amended. Said agent or agents made said examination, and reached the conclusion that the transactions described in the indictment herein were unlawful and forbidden by law. Upon the facts, or alleged facts, being reported to said commission, it sent out to Louisville, Kentucky, from Washington, D. C., the aforesaid S. H. Smith as its attorney and agent to endeavor to procure indictments against this defendant and others. The said Smith did come to Louisville for said purpose, and was thereafter in frequent and protracted conferences with the district attorney, the said conferences and each of them having for their sole purpose and object the bringing about, and procuring, if it could be done, of an indictment or indictments against this defendant and others. At the instance of the government, this court ordered the convening of a special grand jury to inquire into the alleged offenses, and the said special grand jury, so convened, found the indictment herein. Numerous witnesses were sent into the grand jury room with various records, letters, papers, and documents which they had been required to present before the grand jury, and said witnesses testified before said grand jury and produced before said grand jury the various records and documents aforesaid, and they were examined in the grand jury room, with the said records, documents, etc., and testified before the grand jury concerning the same. Said Smith was in fact the leading active agent of the government in its efforts to procure indictments against this defendant and others on account of the matters set out in the indictment herein. He directed, controlled, and dominated the proceedings taken before and during the sessions of the special grand jury which found said indictment. Said Smith furnished the names of the witnesses to the district attorney, and also indicated the papers and documents which said witnesses should be required to produce before said grand jury, and throughout the session of the grand jury he was in constant attendance in the office of the district attorney, advising with him and directing the proceedings before the grand jury. He was constantly kept advised by the district attorney of what was occurring in the grand jury room and before the grand jury, and was thereby enabled to, and did, advise and direct the course of proceedings before it. The district attorney examined the witnesses who appeared before the grand jury, and was attended by his assistant, who is a stenographer, and who took down in shorthand notes the evidence given by the various witnesses. Frequently during the examination of witnesses before the grand jury, the district attorney would suspend the examination, withdraw with his assistant from the grand jury room, leaving the witness in attendance. and then have the evidence of the witness under examination read to said Smith by the assistant district attorney, and receive suggestions from him as to the further examination of the witness, which suggestions were then acted on by the district attorney. When all other witnesses had been examined, the said Smith appeared before the said grand jury as a witness. He had no personal knowledge of any of the facts alleged in the indictment, but was only in possession of information obtained in the course of his investigation, and knew what evidence had been heard. He

appeared before the grand jury as an attorney representing the Interstate Commerce Commission, whose special duty it was at the time to have said grand jury indict this defendant and others for violation of the interstate commerce law, and in that capacity he testified and gave to the grand jury his views, opinions, and argument, to the effect that the evidence heard by the grand jury was sufficient to warrant the finding of an indictment, and as an agent of the government manifested before the grand jury his earnest desire and that of the government and Interstate Commerce Commission that an indictment should be found against this defendant and others. Defendant says that the matters herein set out are true as it verily believes, and alleges that they were in violation of law, and prevented a fair and impartial investigation by the grand jury, and exerted an undue influence on said grand jury, to the great detriment and prejudice of this defendant."

The United States demurs to the plea, and, of course, thereby admits the truth of its averments. We may look at the plea from several points of view:

First. Assuming it to be true that Smith was a lawyer and in the service of the Interstate Commerce Commission; that he examined the books and papers of the railway company; that he was assisting the district attorney in promoting the investigation before the grand jury; that the assistant district attorney was a stenographer; that the latter when in the grand jury room heard the witnesses testify and made notes of their testimony; and that he reported it to the district attorney and to Smith, who went over it with them—nevertheless the assistant district attorney was entitled to be with the grand jury when the testimony was being heard, though not when the grand jury was deliberating thereon and determining whether to return an indictment, and we know of no law that forbids the very natural act on the part of the assistant district attorney of reporting to his chief and to any person aiding him the nature of the testimony heard by the grand jury. Apart from the absence of any law forbidding what was thus done, the possession of such information enables the district attorney to promptly and intelligently develop the facts when the case comes on to be tried in court, and the giving of such assistance should not be discouraged. These matters, we think, in no way prejudiced any right of the accused.

Nor do we think the facts set forth in some detail in the plea to the effect that Smith came to Louisville; that he had frequent consultations with the district attorney, which had for their object the finding of the indictment; that numerous witnesses, with various records, letters, documents, papers, etc., were before the grand jury; that Smith furnished the names of the witnesses, and indicated the papers and documents to be sent before the grand jury; that he was in constant attendance in the district attorney's office, directing the proceedings; that he was kept advised of the progress of the investigation; and that the district attorney or his assistant would frequently withdraw from the grand jury room and consult with Smith, and with him go over the testimony so far as it had been introduced, and receive from him suggestions as to further steps—show anything to prejudice any right of the accused. In the legal sense, all these matters in the plea, as well as others which might be pointed out, are wholly unimportant and trivial. Unquestionably it is the right and the duty of the prosecuting officers of the government to present to the grand jury for investiga-

tion any charge against any person to the effect that the law of the United States has been violated by him, in order to secure indictments against such person if the testimony should warrant it. It is conceivable that there might be doubtful questions for the prosecuting officers to decide concerning what testimony should be presented to the grand jury, particularly if much of that testimony consisted of documents, papers, letters, etc., found in the possession of some person, adversely interested, and brought into court under subpœna duces tecum; and it is also conceivable that the district attorney and his assistant might desire frequently to confer with one who, like Smith in this case, is supposed to be well acquainted with the details of the operations of the interstate commerce laws, and supposed to be well acquainted, as Smith was, according to the plea, with the contents of all the documents, books, letters, etc., intended to be presented to the grand jury. Questions as to the order of the introduction of such papers, and as to whether the evidence already heard made it desirable to introduce some of them, rendered consultations with Smith not only proper, but probably important; but at no time in the history of criminal jurisprudence has such conduct been supposed to be in any way violative of any rule of propriety, or of any right of the person whose conduct was the subject of investigation by a grand jury.

Second. As we have seen, the indictment was returned December 2, 1909, the process was served on February 4, 1910, and the plea was filed February 23d. There is no intimation in the plea of the time when the accused first ascertained the facts stated therein, nor any reason indicated for the delay of 19 days in filing the plea. This is important in view of the rules applicable to such pleas, one of which strictly exacts the most explicit averments, and another of which requires the plea to be presented with the greatest promptness—general rules which are applied not merely to objections to the formation of a grand jury, but to all those matters of abatement which, in the technical sense, are dilatory, and which even if sustained do not finally dispose of the subject-matter of the indictment; as, for example, would the death of the accused. In Agnew v. United States, 165 U. S. 36, 17 Sup. Ct. 235, 41 L. Ed. 624, it appeared that the court opened December 3d, that the indictment was returned December 12th, and that the plea in abatement was filed December 17th. These being the facts, the Supreme Court, at page 45 of 165 U. S., page 239 of 17 Sup. Ct. (41 L. Ed. 624), said:

"The plea does not allege want of knowledge of threatened prosecution on the part of defendant, nor want of opportunity to present his objection earlier, nor assign any ground why exception was not taken or objection made before: and, moreover, the plea is fatally defective in that, although it is stated that the drawing 'tended to his injury and prejudice,' no grounds whatever are assigned for such a conclusion, nor does the record exhibit any such."

On page 44 of the report, page 239 of 17 Sup. Ct. (41 L. Ed. 624) the court had already remarked:

"That the defendant must take the first opportunity in his power to make the objection. When he is notified that his case is to be brought before the grand jury, he should proceed at once to take exception to its competency,

for if he lies by until a bill is found, the exception may be too late; but where he has had no opportunity of objecting before bill found, then he may take advantage of the objection by motion to quash or by plea in abatement; the latter in all cases of contested fact being the proper remedy.   United States v. Gale, 109 U. S. 65 [3 Sup. Ct. 1, 27 L. Ed. 857].   Another general rule is that for such irregularities as do not prejudice the defendant he has no cause of complaint and can take no exception.   United States v. Richardson [C. C.] 28 Fed. 61; United States v. Reed, 2 Blatchf. 435, 456 [Fed. Cas. No. 16,134]; United States v. Tallman, 10 Blatchf. 21 [Fed. Cas. No. 16,429]; State v. Mellor, 13 R. I. 666; Cox v. People, 80 N. Y. 500; People v. Petrea, 92 N. Y. 128."

The Circuit Court of Appeals of the Fifth Circuit had before it the case of Lowdon v. United States, and its opinion is reported in 149 Fed. 673, 79 C. C. A. 361. The plea in abatement in that case was delayed for 17 days after the accused returned to the state of Texas, from which he was absent when the indictment was returned. The plea, after setting up the grounds relied upon for the abatement sought, contained the general statement that the accused had been "greatly prejudiced" by what had been done. The court, pursuant to the ruling in the case of Agnew v. United States, held that the plea was insufficient, both because it came too late and because it did not explicitly show how there was any injury to the accused as the result of the things complained of in the plea. We cannot definitely say from the report, especially in the latter case, whether the accused had been held over at any examination had for that purpose before the return of the indictment. Here we know that such was not literally the case, though it appears from the plea itself that the accused had every reason to understand that the grand jury would be called upon to consider the subject; but whether these things should make any difference in a case where the plea itself states no reason for the delay of 19 days after service of process we need not definitely determine in view of other considerations.

Third. We come now to the conduct imputed to Smith in the presence of the grand jury. When we assume the truth of what is stated in this connection, we are most strongly inclined, if we can hold that the plea is otherwise good, to sustain the contention of the accused and quash the indictment. If Smith had knowledge of any pertinent fact which the district attorney deemed important, that officer clearly had the right to call him before the grand jury to testify thereto; but it would be grossly improper for him, when called there for that purpose, to urge any opinion of his own, or by argument to persuade the grand jury to return an indictment not upon the testimony, but upon the ground that the government and the Interstate Commerce Commission desired it. Manifestly such desire, either upon the part of the government or upon the part of the commission, would of itself furnish no reason for indicting anybody. The grand jury should be an independent body, free from such arguments, influences, or persuasions. In what it does it should act upon the testimony and the charge of the court, and any intrusive suggestions or arguments put before it by a mere witness is an impertinence, if not indeed a contempt; particularly if made by one who, occupying an official position, has gained access to the grand jury under the pretense of being a witness. The

Interstate Commerce Commission has important functions, but they are outside of the courts, and in a special sense outside the grand jury room. If any of its agents do as it is charged under oath Smith did in this instance, it was probably entirely without the knowledge or authority of the commission, and we do not say that Smith actually did what is charged against him, though the suspicion raised by the verified plea justifies comment.

We by no means question cases like Crowley v. United States, 191 U. S. 461, 476, 24 Sup. Ct. 731, 48 L. Ed. 1075; United States v. Virginia-Carolina Chemical Co. (C. C.) 163 Fed. 66; United States v. Rosenthal (C. C.) 121 Fed. 862; United States v. Heinze (decided October 12, 1909) 177 Fed. 770; and many others of like character, in which such matters, as expressed by Mr. Justice Harlan in the Crowley Case, at page 476 of 194 U. S., page 737 of 24 Sup. Ct. (48 L. Ed. 1075) were "seasonably brought to the attention of the court by plea in abatement," which, as we have seen, was not done here. These cases hold that no person except those authorized by law can properly be with the grand jury while it is in session. If the contrary of this happens, it may well be presumed, prima facie, that an accused person was thereby prejudiced. The plea before us expressly states that Smith appeared before the grand jury as a witness. This is conclusive of his right to be there at least for that purpose. If, after his lawful admission to the grand jury as a witness, he did irregular and improper things, the plea should explicitly point out what those things were, so that an issue may be formed and testimony heard thereon. Mere general characterization cannot meet the demand for those specific statements of fact exacted by the rules of pleading in such cases. Lowdon v. United States, 149 Fed. 674-675, 79 C. C. A. 361. So that our real trouble is with the plea itself, even when we assume all its averments to be true, including many which seem to be quite unimportant and immaterial. There is an unexplained delay of 19 days in filing the plea, and no averment indicates when the alleged facts were first ascertained. There is an absence of any statement of fact to support the conclusion that Smith exerted an undue influence on the grand jury to the detriment or prejudice of the accused, and an absence of adequate showing as to how the undue influence was exerted. Nor is there any specific statement of fact to warrant the pleader's conclusion, very generally stated, that Smith, by what he did, prevented a fair and impartial investigation by the grand jury. No specifications are given in connection with these general charges. The plea does not show what persons composed the grand jury, nor who of those persons were influenced by what Smith said or did, nor who, if any of them, voted for an indictment who would not have done so upon the evidence if Smith had not said or done anything except testify. The plea is silent on each of these matters. If it had shown who composed the grand jury, and that a sufficient number of them, giving their names, were influenced in their action by the arguments and persuasions of Smith to vote for finding the indictment, although such persons had doubts whether the testimony was sufficient to justify that action, and that but for such arguments and persuasions they would not

have voted to indict the accused, then we should have explicit statements upon which to base a conclusion that Smith's conduct in fact was detrimental and prejudicial to the accused; but we find nothing of this kind in the plea. There, as in the Agnew and Lowdon Cases, we find a conclusion stated that the accused was prejudiced, but no averment of facts to support it. There may have been, and, assuming the plea to be true, there was, palpable irregularity and impropriety in Smith's conduct after he got before the grand jury as a witness; but that should not vitiate the indictment unless it is made to appear that in fact it worked harm to the accused either in the way we have indicated or in some other equivalent way. And it is almost impossible to suppose that the accused did not have ample information that a prosecution was intended by the United States when Smith, in advance of the meeting of the grand jury, made a thorough examination of the books, papers, and correspondence of the railway company in respect to the very transactions out of which subsequently resulted the indictment. These facts may have made promptness in filing the plea all the more imperative. In short, as the plea was not presented until 19 days after the process was served, as there is in it no explanation of the delay and no statement as to when the facts were first ascertained, as the plea is vague and inexplicit, and as it does not definitely show how the accused was in fact prejudiced—for, peradventure, the grand jurors might have voted precisely as they did if Smith had not done anything except testify—we think the case is obviously within the rules laid down in the Agnew and Lowdon Cases. See, also, United States v. Greene (D. C.) 113 Fed. 683. Pleas in abatement, being designed to avoid a trial on the merits, are not only strictly construed but are not often favored by the courts, as this plea would.be if it had come up to the rules we have noticed. We are therefore constrained to hold that the plea is not sufficient, and that the demurrer thereto should be sustained. All the authorities agree that a plea in abatement is not open to amendment, and the accused will be ordered to plead to the indictment on or before the next calling of the case.