UNITED STATES v. RINTELEN et al.

(District Court, S. D. New York. September 14, 1916.)

**1. CRIMINAL LAW ⬉280(2)—PLEAS IN ABATEMENT.**

An indictment is not subject to plea in abatement because incompetent testimony was presented to the grand jury, unless competent evidence sufficient to justify the indictment was not presented; the technical rules as to evidence not applying to the investigations of the grand jury.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 647, 648; Dec. Dig. ⬉280(2).]

**2. CRIMINAL LAW ⬉279—ABATEMENT—PLEA IN—TIME FOR FILING.**

A plea in abatement is a dilatory plea, and must be interposed promptly, usually at the time of arraignment; therefore a plea in abatement, filed after answer and motion to quash, on grounds which accused might have discovered before, comes too late.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 643, 644; Dec. Dig. ⬉279.]

**3. CRIMINAL LAW ⬉280(2)—ABATEMENT—PREJUDICE OF GRAND JURY.**

An indictment is not subject to attack where founded on sufficient evidence, because the grand jurors from reading newspapers had acquired strong opinions, and even bias against accused.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 647, 648; Dec. Dig. ⬉280(2).]

**4. CRIMINAL LAW ⬉280(2)—PLEA IN ABATEMENT—DISCUSSION OF INDICTMENT.**

Where the evidence was clear and conclusive, the fact that the grand jury returned the indictment without discussion, on the prosecutor summing up the evidence and informing them of the law, is no ground for plea in abatement.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 647, 648; Dec. Dig. ⬉280(2).]

**5. CRIMINAL LAW ⬉280(2)—ABATEMENT—MISCONDUCT OF PROSECUTING ATTORNEY.**

As grand jurors may well need guidance as to the law and the weight of the evidence, the district attorney may place the evidence before them, sum it up, and charge them as to the law, but he cannot dominate the grand jury or control its findings. Therefore an indictment is not subject to objection because the district attorney informed the grand jury as to the law, summarized the evidence, and in conclusion stated that he desired an indictment, it appearing that the grand jury, though they returned the indictment without discussion, were not coerced, and that the district attorney's presentation was fair, unbiased and judicial in its character; the request for an indictment being no more than informing the grand jury of his purpose in presenting the evidence to them.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 647, 648; Dec. Dig. ⬉280(2).]

**6. CRIMINAL LAW ⬉280(2)—ABATEMENT—MISCONDUCT OF PROSECUTOR.**

Though the district attorney was guilty of misconduct before the grand jury, in attempting to influence them to return an indictment, the indictment is not open to attack, unless it appears that the rights of accused were prejudiced.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 647, 648; Dec. Dig. ⬉280(2).]

⬉For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Franz Rintelen and others were indicted for criminal conspiracy, and F. S. Monnett and another of the defendants filed a plea in abatement. Plea overruled.

See, also, 233 Fed. 793.

John Lord O'Brien and Isaac R. Oeland, both of New York City, for the United States.

Pugh & Pugh, of Columbus, Ohio, for F. S. Monnett.

AUGUSTUS N. HAND, District Judge. This is a motion to strike out the pleas in abatement of F. S. Monnett and Jacob C. Taylor to an indictment charging these persons and others with conspiring to foment strikes in munition factories for the purpose of restraining the export of munitions to foreign countries. To this indictment a plea in abatement has been interposed upon six separate grounds:

(1) The district attorney and his assistant: (a) Expressed to the grand jury their opinions on the questions of law and fact involved; (b) asked that an indictment be found; (c) handed the grand jury a list of the defendants; (d) the grand jury found an indictment without a discussion of the evidence and without changing the names on the list.

(2) While a witness was testifying there was a stenographer in the grand jury room.

(3) The government caused the office of Martin and Fowler, two of the defendants, to be opened without their consent, and caused Catherine Foley to carry away her stenographic notes of their letters, and caused her to read these notes to the grand jury as part of the evidence on which the indictment was found.

(4) The government subpœnaed the National Metropolitan Bank of Washington to produce the checks and deposit slips of the defendant Martin, and offered them in evidence before the grand jury.

(5) The stenographic notes and checks and deposit slips were not returned to Martin and Fowler.

(6) The grand jurors were actuated by a strong temper and prejudice against the defendants as the result of false statements and vicious newspaper publications.

[1] The defendants have long since entered pleas of not guilty, and thereafter moved to quash the indictment upon grounds embraced in 2, 3, and 4 of this plea. This motion was denied in an opinion filed by Judge Wolverton in which I concur, and which I should, in any event, follow, according to the custom in this district. Pleas in abatement were first used in cases of a misnomer, thereafter to attack the regularity of drawing and convening grand jurors, and still later to determine whether an indictment had been found on incompetent evidence. United States v. Swift, 186 Fed. 1002. It has been held, however, that in order to invalidate an indictment, it is not sufficient to show that incompetent evidence was presented to the grand jury, but it must be shown that competent evidence which might justify an indictment was not presented. Nor is this in any sense technical. It must be remembered that indictments are in no sense trials, but ex parte investigations, resulting in a complaint indicating only that the

grand jury has found that there is sufficient ground to justify charges and a trial of the accused. It is most important that these accusations should be based upon proper evidence, but equally important that a violation of technical rules of evidence should not result in nullifying the findings of grand juries, based upon competent and sufficient proof. It is to prevent delay as well as to protect the grand jurors from a criticism which is likely to impede their efficiency, and to prevent persons charged with crime from knowing the testimony which the government expects to produce against them, that the sessions of the grand jury have been held secret and inviolate, and that motions to inspect the minutes have been denied in the federal courts.

[2] Moreover, pleas in abatement are dilatory pleas which must, under the decisions, be interposed promptly, usually at the time of arraignment. The defendant Monnett, in his motion to quash the indictment, annexed extracts from the testimony of the congressional committee hereafter alluded to. If, therefore, he did not know, he probably might have long ago ascertained the grounds urged in paragraph 1 of this indictment, which is the only ground of importance upon which he attacks it. I think it is reasonably urged, therefore, that this plea in abatement comes too late. Agnew v. United States, 165 U. S. 36, 17 Sup. Ct. 235, 41 L. Ed. 624; United States v. American Tobacco Co., 177 Fed. 774. The court has, however, already allowed this plea to be interposed, and as both parties desire a ruling upon the merits on the first and sixth subdivisions, I shall proceed to give it.

[3] Before taking up the first subdivision, I shall refer to the sixth, which avers that the—

"grand jurors in finding the said indictment against the defendant were actuated by a strong temper and prejudice against the defendant, as the result of false statements and vicious newspaper publications."

These allegations contain no statement of ultimate facts. An intelligent grand juror can hardly be found who has not decided opinions derived from his general knowledge as to any case of public notoriety. He may have even passionate feelings on the subject, which in general affect and actuate him. The question is not what his feelings were, but whether he voted for an indictment honestly and upon competent evidence. That an indictment can be quashed because the grand jurors had personal prejudices, even ill-founded ones, would leave every indictment in an important case, irrespective of the evidence on which it was found, open to attack. In this case the plea does not allege that any grand juror would not have voted in the same way as he did, irrespective of his feelings or of the articles in the newspapers. I know of no case in which such a plea has been sustained or argument made, and am of the opinion that it cannot stand. United States v. American Tobacco Co., 177 Fed. 774; United States v. Mitchell (C. C.) 136 Fed. 896.

[4, 5] Coming to the first clause of the plea, it is based upon the accompanying excerpts from the evidence taken before the subcommittee of the House of Representatives engaged in an investigation of the office of the district attorney for this District in the course of im-

peachment proceedings sought to be instituted by Congressman Buchanan, one of the defendants in this action. This evidence included testimony of grand jurors subpœnaed by the congressional subcommittee who were required to testify before that committee as to proceedings before the grand jury. Whether this testimony was absolutely privileged and the extraction of it was an invasion of the privileges, not only of the grand jurors called, but of other grand jurors, whose privileges these witnesses could not waive, is not, I think, material here, for the testimony was taken, is now before the court, and I cannot regard it as unavailable to the defendant Monnett, if his plea is to be considered on the merits. This testimony I will summarize. When reduced to narrative form the substance was as follows: The foreman, Dale:

After all the testimony was in, and it was a cause that had taken quite some time, the district attorney presented to us the law in the case on which he asked our consideration and made a partial résumé of some of the testimony as bearing upon the law, absolutely in a judicial capacity. He simply resumed the testimony that had taken place and its possible bearing, laying no stress and no weight; questions were asked him for certain things we applied in certain conditions, and he advised "yes" or "no," as the case might have been. That was immediately before we found the indictment. There was no other case that we sat on that he made a résumé on.

### Grand Juror Joel B. Barber:

I considered the law and followed it as the district attorney gave it to me. I did not get the impression that he desired a true- bill, but that he was making a very earnest effort, and a very thorough effort, to get at the bottom of anything that broke the law. I gathered that the evidence was such that I should vote for an indictment on the law that he read me directly from the book. He commented upon the law only to make it clear. It was very clear, a very short paragraph relating to this particular section. I would not say that he commented upon it to make it clear. If I did, I was only saying that in reading this paragraph, he did not then put the book down and say nothing. Very likely he made some comments. Either Mr. Marshall or his assistant answered a question relative to just what constituted conspiracy. We wanted to be very clear on it. We voted for these men all in a bunch. They were presented by the assistant district attorney.

### Grand Juror Frederick W. Stevens:

I think the district attorney must have read off the names. We did not indict anybody. He did not read at that time. I do not remember particularly the district attorney making a statement at the conclusion of the evidence which was submitted to me, except that here was the evidence, and asked for our vote on it. I should have said that Mr. Sarfarty (the assistant district attorney), after we got through with the evidence, made a statement, telling us briefly what the evidence was, and what was the law. I should say, because I think it always is done, the district attorney says, "Here is the evidence and we want an indictment on these people." When these names were handed to us we never added a name to the number, nor subtracted a name from the number. We took it just as the district attorney handed it to us. We did not take him into account, we took the evidence. Mr. Marshall I should think addressed the grand jury many times. He did not discuss the weight of the evidence that I recollect.

### Grand Juror Arthur Wade:

Mr. Marshall read the law to us, Mr. Sarfarty reviewed the evidence. He read the law in regard to the Sherman Act, and Mr. Sarfarty read the evi-

dence. We asked him to. After we had his evidence, he asked for the indictment of a certain group of names. We were largely guided by the district attorney, because we had evidence on this matter from various witnesses, and we could not get away from it. He read the law to the grand jury just before we found the indictment. He did not say anything except to read the law from a law book, and some questions were asked him in regard to the law. We took the law from him as he read it. Statements that Mr. Marshall made to the grand jury did not aid me in coming to the conclusion I did. There had been no discussion of who was to be indicted. We just ratified the list that he gave the jury. We were satisfied of their guilt, and found the indictment. The giving of evidence was ended when he read the Sherman law.

### Grand Juror William A. Witherill:

Sarfarty spoke after Marshall, who commenced reading the law, and Sarfarty finished up. I should judge it was a typewritten statement. Sarfarty read from. I should imagine it was something better than an hour. Mr. Marshall said, before he sat down, that Mr. Sarfarty would review the testimony. There was not sufficient evidence to return an indictment against Mr. Kramer, the treasurer of the National Peace Council. It may be we were not asked to return an indictment against him. In this particular case we returned an indictment against every man that we were asked to return an indictment against. In other cases, we did not.

It will hardly be contended, I think, that the district attorney, or his assistant, exhibited any passion at the sessions of the grand jury, and I cannot perceive the slightest ground for believing that either of them in any way attempted to dominate or control that body in the finding of the indictment. Without regard to the questions of legality, which I shall presently discuss, all that was done was a presentation of the case in a perfectly temperate way by these prosecuting officers. As a matter of fairness and decorum, there can be no question that these men met every obligation. The only matters for discussion are whether they exceeded their rights in reading the law, reading some of the minutes at the request of the grand jurors, summarizing the evidence, asking for the indictment, and giving to the grand jury a list of the defendants.

Assuming that a grand jury were simply supplied with the witnesses and nothing more, and a prosecuting officer who had prepared the case and was familiar with the law and evidence was not allowed to be present, what sort of an investigation would be had, or intelligent consideration secured, in a difficult or complicated matter? The mere statement of this assumption to any one familiar with such matters causes a conviction of the impracticability of such procedure. The moment the district attorney is of any real aid he does more than this, and if he does more, he does no less than was done in this case. If he does not give the grand jurors the statute, they will usually not know what the investigation is for. If in a complicated case he were not allowed to show the grand jurors the bearing of the evidence upon the alleged violation of the statute, they would certainly be confused as to the entire situation. Even a trained judge is often unable to understand the bearing of relevant testimony without the aid of counsel. Asking the grand jury to find an indictment is but putting in words what every act of the government, and its representatives, means and is well known to mean. What reasonable objection can be urged

against allowing the man who has prepared the case to refresh the recollection of the grand jurors by summarizing the evidence taken, perhaps, over weeks or months, and reading from the minutes and giving them a list of the names of the persons charged with the crime? Any objection is really, if not ostensibly, based on the supposition that grand juries are devoid of all independence and prosecuting officers are either tyrannical or dishonest. No such suppositions should be indulged in, unless proved, and no proof appears from the testimony of the grand jurors accompanying the plea in abatement. Unless, therefore, I am controlled by prior adjudications, I think it clear that the conduct of the district attorney, which seems to have been entirely fair and reasonable, was equally lawful. As for the objection that the grand jury found the indictment without discussion, an absence of discussion might tend to corroborate other evidence of coercion by the district attorney; but, as there is no showing of coercion, the absence of discussion becomes quite immaterial. Grand jurors are not obliged to discuss and argue if they do not need to do so. If the evidence seems conclusive, they may vote at once, as they doubtless many times do. This objection shows but one of the many evil results of making public the deliberations of a grand jury.

The case relied upon by the defendants is United States v. Wells, 163 Fed. 313. There the district attorney not only gave the grand jury a list of the defendants and commented on the weight of the evidence, but before the indictment was signed was requested to leave the room by one of the jurors, so that there could be discussion, and refused to go, said that no discussion could be had until the indictment was signed, directed the foreman to sign the indictment without permitting further consideration or reading of the indictment, and withheld various documents from the inspection of the grand jury, the contents of which they were obliged to take from the statements of the district attorney only. It is manifest that the facts of that case were utterly different from those of the case at bar. The indictment there was evidently controlled by the district attorney, was not the finding of the grand jury, and consequently the plea in abatement was there properly sustained. I am referred to no other decision than United States v. Wells, supra, where an indictment has been held bad by reason of the conduct of a district attorney before the grand jury.

In the case of United States v. Mitchell (C. C.) 136 Fed. 896, Judge Bellinger said:

"The district attorney may explain both his case and his law to the jury. * * * If he went beyond this, his acts may constitute an irregularity; but the case must be extreme before the court will try the district attorney or the grand jury, * * * in order to determine whether it will try a defendant."

In United States v. Cobban (C. C.) 127 Fed. 713, Judge Beatty said:

"The testimony, all fairly considered, I think shows that he stated the facts he expected to establish and explained the law applicable. I think from the testimony of Curtis he was over zealous, but his testimony is much modified by that of the other witnesses. * * * I believe it is said by some courts that the jury must get its advice on the law only from the court. Undoubtedly a jury may call on the court whenever it desires, but to march

in on the court whenever a question of law is suggested is a practice not to be encouraged. The prosecuting officer is supposed to be learned in the law."

Mr. Justice Field, in his charge to the grand jury, reported in 2 Sawy. 667, Fed. Cas. No. 18,255, said:

"The district attorney has a right to be present at the taking of testimony before you for the purpose of giving information or advice touching any matter cognizable by you, and may interrogate witnesses before you, but he has no right to be present pending your deliberations on the evidence. When your vote is taken upon the question whether an indictment shall be found or a presentment made, no person besides yourselves should be present."

Another statement of the duties of a district attorney was given by Judge Emmons, and reported in Fed. Cas. No. 3,925 under the title of In re District Attorney. He said:

"It is not unfrequent for the court to require much explanation from the district attorney, in reference to the meaning and connections of such laws, before it is able intelligently to suffer him to proceed with evidence before the trial jury. We do not understand how it is possible for the grand jury to perform its duty with less, or how, without constant explanation, it can determine the proper application of the facts to the law. * * * The limit of the district attorney's duties is reached when he has explained the meaning of the laws, laid before you all evidence in his hands officially, and aided in the examination of the witnesses. He should take no part whatever in your discussions as to guilt. The weight and credibility of the testimony is wholly for you, without even a suggestion from him. * * * His opinion as to the sufficiency of the evidence to prove guilty should never be given, even if asked by the jury. His opinion in reference to the meaning of the law should never be withheld. Whether the facts are proved, he has no right to suggest even."

In these remarks by Judge Emmons we have a statement of the strictest and most careful rule in regard to the conduct of the prosecuting officer before the grand jury. I think no well-considered decision where the point was at issue has held that the district attorney should not advise as to the law, and section 263 of the New York Code of Criminal Procedure expressly provides that on request of the grand jury the district attorney shall attend for the purpose "of giving them advice upon any legal matter." It is often impossible to do this in a practical and helpful way without discussing the facts, as every lawyer knows. As Judge Emmons said, supra:

"We do not understand how it is possible for the grand jury to perform its duty with less, or how, without constant explanation, it can determine the proper application of the facts to the law."

What was aimed at by Judge Emmons' instructions was to insure two things: (1) That the jury should have assistance as to the law and in interpreting the relation of the law to the facts; (2) that the district attorney should not dominate the grand jury or control its findings.

The purpose of these instructions was to secure a fair independent investigation by the grand jury, and not to establish rigid and technical rules. Such an investigation may be helped if the district attorney does not discuss the credibility of witnesses, but is not necessarily or probably helped if he does not review the evidence at all. I do not

think the district attorney in the case at bar transgressed the spirit, or 'even the letter, of these rules by giving a résumé of the evidence. Nor do I think the mere statement: "Here is the evidence. We want an indictment"—which the Juror Stevens quoted, of much moment. The juror evidently had little, if any, recollection of such a statement. He was asked whether the district attorney's office presented names, and said, "We want these men indicted;" and he replied:

"Although I do not remember the action of that, I should say that was done, because I think that is always done; that is, the district attorney says: 'Here is the evidence, and we want an indictment on these people.'"

In other words, the juror, doubting his recollection of the specific case, said in effect:

"The district attorney always does that. That is what he is there for."

Every member of the grand jury knows the prosecuting officer would not be offering evidence if he did not deem the case a proper one for an indictment. The words are the mere interpretation of all his actions, and in no case indicate an insistent demand for an indictment. I think the request for an indictment testified to by·Wade and Witherill amounted to nothing more than a formal indication of the government's position. The list of names was but a means of giving the jurors a correct·statement of the men under investigation. They were neither · required, nor urged, to indict them.

There is undoubtedly some conflict of authority as to the limits of what a district attorney is permitted to do before the grand jury. I think the true rule is that he may question the witnesses, advise as to the law, and explain the relation of the testimony to the law of the case. In doing this, he may review the evidence. He must refrain from the slightest coercion of the grand jury and take every pains to have a fair inquest. I do not think it appears that the district attorney overstepped these limits. Independence and freedom from coercion are the things aimed at, and the expressions of different judges as to what may or may not be done by the district attorney are all, I think, attempts to define what is necessary to secure these conditions.

[6] If, however, I am incorrect, and some of the acts of the district attorney passed the bounds of the letter of the law, I can find no allegation or proof from the excerpts of testimony that the defendants have been prejudiced. Some rules are held to be vital, and the transgression of them sufficient to vitiate the entire proceeding. For example, the presence of an unauthorized person in the grand jury room was held by Judge Hough to require the dismissal of the indictment. United States v. Heinze (C. C.) 177 Fed. 770. See, also, United States v. Edgerton, 80 Fed. 374. If, however, a comment by the district attorney, on the testimony were held in itself to invalidate an indictment, the opportunity for technical motions and dilatory pleas in criminal cases would be greatly enlarged. A plea based on the conduct of the district attorney before the grand jury should be adjudged insufficient unless it clearly shows prejudice to the defendant and indicates that the alleged irregularities affected the action of the grand jury. That this is the proper rule appears from various decisions. Agnew v.

United States, 165 U. S. 36, 17 Sup. Ct. 235, 41 L. Ed. 624; United States v. American Tobacco Co., 177 Fed. 774; United States v. Nevin, 199 Fed. 833; United States v. Gradwell, 227 Fed. 243. The dictum in United States v. Wells, supra, so far as it is not in accord with the rule I have laid down, does not follow the weight of authority.

Under the circumstances of this case to embark upon a trial of the grand jury or the district attorney as to the conditions under which the indictment was found would be a most irregular and unjustifiable proceeding.

Judge Hook, writing for the Circuit Court of Appeals for the Seventh Circuit, in the case of McKinney v. United States, 199 Fed. 29, 117 C. C. A. 407, well said:

"There is an unfortunate tendency in criminal jurisprudence to raise minor matters to the dignity of substantial rights. The plain safeguards against governmental and private oppression have become, by judicial action, so embedded in non-essential additions and technical refinements that their true limitations are not always clear, and it not infrequently happens that criminal trials become mere adroit contests, in which substance yields to form and the search for truth is diverted to and ends in collateral inquiries. * * * Of course fundamental safeguards should not be frittered away, but the growth of judicial construction should also be with due regard to the just rights of society and the practical conduct of trials."

My opinion on the whole case is that the motion to strike out the plea in abatement should be granted because no acts prejudicial to the legal rights of the defendants are set forth, nor any conduct of the district attorney shown which has prevented a fair consideration of their case by the grand jury.