MATTERS v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. July 11, 1917.)

No. 4626.

1. CRIMINAL LAW ⟪⟫278(1)—PLEAS IN ABATEMENT—IRREGULARITY IN DRAWING OF GRAND JURY.

The right to file a plea in abatement for irregularity in drawing the grand jury, months after the indictment was returned, is not absolute, but subject to the sound discretion of the court, and its refusal to rule on such a plea, filed without leave seven months after the indictment was returned, and after two prior pleas had been ruled on, was not error.

2. BANKS AND BANKING ⟪⟫257(3)—EVIDENCE—RELEVANCY.

On the trial of an indictment charging a violation of the national banking law (Rev. St. § 5209 [Comp. St. 1916, § 9772]), by aiding and inducing the president of a national bank to issue a certificate of deposit without consideration to the bank, which defendant used in part payment of an indebtedness of his own, evidence showing the entire transaction between defendant and his creditor, who was a widow, and tending to show that he attempted to defraud her, was irrelevant to the issue, and its admission was prejudicial error.

In Error to the District Court of the United States for the District of Nebraska; F. A. Youmans, Judge.

Criminal prosecution by the United States against Thomas H. Matters. Judgment of conviction, and defendant brings error. Reversed.

John L. Webster, of Omaha, Neb., for plaintiff in error.

A. W. Lane, Sp. Asst. U. S. Atty., of Lincoln, Neb. (T. S. Allen, U. S. Atty., of Lincoln, Neb., on the brief), for the United States.

Before HOOK, SMITH, and CARLAND, Circuit Judges.

CARLAND, Circuit Judge. Matters was convicted and sentenced upon an indictment which in 20 counts charged him with violating

section 5209, Rev. St. (Comp. St. 1916, § 9772). The indictment was attacked by motion to quash and by demurrer. The ruling of the trial court in sustaining the indictment is assigned as error, but counsel have not seriously pressed the assignment, further than to draw our attention to what seems to counsel a misconception on the part of the trial court of the essential elements of the crime denounced by the statute. We have examined the indictment and have no doubt of its sufficiency.

[1] The indictment was returned on June 8, 1914, and on December 19, 1914, counsel for defendant, without leave of court, filed a third plea in abatement. The trial court refused to rule upon this plea, and its refusal is assigned as error. The right to file a plea in abatement for irregularity in the drawing of the grand jury, so long after the return of the indictment, was not absolute, but was subject to the sound discretion of the trial court. Its refusal to rule upon the plea was equivalent to a refusal to allow the plea to be filed. In view of the fact that there had been two prior pleas in abatement ruled upon, and that the third plea was presented more than 7 months after the indictment was returned, there was no error in the refusal of the court to consider the plea. Agnew v. United States, 165 U. S. 36, 17 Sup. Ct. 235, 41 L. Ed. 624; Lowden v. United States, 149 Fed. 673; Moffatt v. United States, 232 Fed. 522, 146 C. C. A. 480; United States v. Rintelen (D. C.) 235 Fed. 787.

The sixteenth count of the indictment charged Matters with aiding and abetting one Luebben, president of the First National Bank of Sutton, Neb., in the misapplication of the funds of the bank, with the intent on the part of each to injure and defraud the same. It was alleged in this count that Luebben as president, without any consideration passing to the bank from any one, on June 4, 1913, issued a certificate of deposit at the request of Matters, payable to the order of one Mary E. Johnson, for the sum of $1,500; that Matters delivered the certificate of deposit to the payee thereof in payment of a debt and obligation owing by Matters to said Mary E. Johnson; that the amount of said certificate was subsequently paid by Luebben as president of the bank to the payee, without any consideration passing to the bank therefor. Matters at the trial did not dispute that the certificate of deposit was delivered by him to Mary E. Johnson in part payment of his personal debt, but contended that the certificate was obtained from the bank in a legitimate way. The prosecution, for the purpose of proving the charge made in the sixteenth count, placed Mary E. Johnson, the payee named in the certificate of deposit, upon the stand as a witness. Her testimony, reduced to narrative form, covers over 20 pages of the record, and cannot be detailed in this opinion. It is sufficient to say, however, that the witness, over the repeated objections and exceptions of counsel for Matters, was allowed to narrate the history of a financial transaction between herself and Matters, extending over a period of 3 years and 6 months prior to the issuance of the certificate of deposit.

The witness was allowed to testify that the debt of Matters to her was originally contracted early in the year 1910, by the delivery by

her to Matters of $2,500, the proceeds of her husband's life insurance, upon the representation by Matters that he would invest the money in Dakota lands and would double the money in a year, and that he would return it to the witness at any time on 30 days' notice; that when the year expired she asked Matters for a return of the money, but was put off from time to time until about the middle of December, 1912, upon the plea that sales had not been good; that at this time some of her friends undertook to assist her in securing the return of the money; that Matters finally promised to pay her the money on a particular day, and on that day she went to see him accompanied by Mr. Burkett and Mrs. Edwards. On that occasion, although Matters declared he had the money, he refused outright to pay the witness anything, for the reason, as he said, that he had not been given the proper notice; that Matters and the witness were members of the same church; that, when she was unable by her own efforts to obtain the repayment of the money from Matters, she took the matter to the church, and later she went to Matters' office, accompanied by the pastor and three members of the church, and that on this occasion prayer was offered up that Matters might be made to see the errors of his ways and repay the money; that the witness told Matters that he would sell his soul for a mess of pottage; that at this last interview Matters demanded an additional 30 days' time, and insisted upon writing the notice to be given by the witness to Matters that he should repay the money; that in writing this notice he incorporated what purported to be a receipt for a mortgage which the witness never had seen, and purporting to be signed by parties of whom she never had heard. In the brief of learned counsel for the government, the following observation is made in regard to this paper:

"The date of this was February 17, 1913, and was transparently an artful attempt to shift the form of the obligation, and to get away from the real character of the indebtedness."

The witness was further permitted to testify that the money was not paid at the expiration of 30 days, and about April 9, 1913, the witness went again to the office of Matters, accompanied by E. G. Jones; that the witness had visited the office of Matters for the purpose of collecting this money hundreds of times; that finally, upon the advice of Mr. Jones, the witness received from Matters, in settlement of her indebtedness against him, not only the $1,500 certificate of deposit, mentioned in the sixteenth count, but also another certificate of deposit, issued by the Sutton National Bank, for $2,000; that the certificate for $2,000 was unpaid when the bank failed; that witness received from Matters a deed for 160 acres of land in Banner county, Neb., on account of the certificate for $2,000; that she was never satisfied with the settlement, and had never been able to sell the Banner county farm for anything.

[2] If counsel for the government make the argument to us that the writing of the paper on February 17, 1913, was transparently an artful attempt to shift the form of the obligation and to get away from the real character of the indebtedness, it is very easy to infer what use was made of all this testimony before the jury. Matters

was not on trial for defrauding or attempting to defraud a widow of the life insurance money of her husband, and we think it was clearly prejudicial error to allow the whole transaction between the witness Mary E. Johnson and Matters to be investigated. The average citizen rightfully has little patience with those who violate the laws which regulate the banking institutions of the country, and for this reason, in this class of cases especially, the evidence should be confined to the allegations of the indictment.

It is claimed by counsel for the government that the evidence was relevant upon the question of the intent of the defendant in securing the issuance of the certificate of $1,500, for the reason that it showed that Matters was embarrassed and unable to pay his debts. We are of the opinion that, conceding the insolvency of Matters was material to the inquiry before the court, it did not justify the admission in evidence of the whole history of the transaction between Mary E. Johnson and Matters. The primary effect of the evidence was to show that Matters had attempted to defraud Mrs. Johnson out of her money. The effect, if any, of the evidence upon the real issue in the case being tried was so incidental and small that it would be lost, so far as the jury was concerned, in the presence of those features of the testimony to which we have adverted. The introduction of the evidence in our judgment prevented a fair trial.

There are many other grave errors assigned in the record, but as there must be a new trial, and the errors complained of may not occur again, we do not find it necessary to consider them.

For error in the admission of the testimony heretofore described, the judgment below is reversed, and a new trial ordered.