AMERICAN SHEET & TIN PLATE CO. v. URBANSKI et al.

(Circuit Court of Appeals, Third Circuit.   June 4, 1908.)

No. 40.

1. MASTER AND SERVANT—MASTER'S LIABILITY FOR INJURIES TO SERVANT—PROXIMATE CAUSE OF INJURY.

Plaintiff, while employed in defendant's tin plate mill, was injured by the overturning upon him of a small carriage or "buggy," loaded with plates, which was being drawn over the brick floor of the mill by two other workmen, close behind plaintiff where he stood at work at a shearing bench.   The evidence tended to show that one of the wheels of the buggy ran into a hole or depression in the floor, and that the man having hold of the handle was turning it from side to side, while the other was pushing behind, in an effort to raise the wheel from the hole, when it was overturned.   *Held*, that under such circumstances the defective condition of the floor, and not the movement of the workman in the effort to extricate the wheel, was the proximate cause of the injury, the said movement being the natural and to be expected consequence of the dropping of the wheel into the depression, and that under such evidence the question of proximate cause was for the jury.

2. SAME—RISKS ASSUMED BY SERVANT.

The question whether plaintiff assumed the risk arising from the defective floor, assuming it to have been defective, was one for the jury, under evidence showing that he was a minor and inexperienced and his own testimony that while he knew of the defective condition of the pavement he did not know and had not been warned that any such accident as that causing his injury was likely to result therefrom.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 1068–1088.

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

3. SAME.

Risks due to the negligence of the master are not to be included among the ordinary risks of the employment assumed by the servant, and in order to relieve the master from liability for an injury resulting from his neglect of any of the primary duties owing from him to the servant it must be made affirmatively to appear, not only that the situation so brought about was apprehended by the servant, but also that the particular danger arising therefrom was appreciated by him.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 574–600.]

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

David A. Reed, for plaintiff in error.

George O. Calder, for defendants in error.

Before MOODY, Circuit Justice, and DALLAS and GRAY, Circuit Judges.

GRAY, Circuit Judge.   This was an action to recover compensation for personal injuries by Frank Urbanski, an infant (hereinafter called the plaintiff), by his father and next friend, Michael Urbanski, and by the father in his own right, per quod servitium amisit, against the plaintiff in error (hereinafter called the defendant).   The Circuit Court had jurisdiction by reason of diversity of citizenship.

The plaintiff had been employed in the tin plate mill of the defendant about two weeks, as helper to a workman who was called a shears-man. They worked at a bench containing shears for clipping the sides of the plates, after they came from the roller, the man being on one side and the plaintiff on the other, whose duty it was to remove the clippings from the bench to a pile on the floor, to assist about the shears generally, and to help to load small carriages, called "buggies," used to transport plates to and from the shears. There were a number of these shears in the same room with the one at which the plaintiff was working. At the time of the accident, the plaintiff was working on one side of the shears and the shearsman on the other, the man and boy thus facing each other, with the bench and shears between them. To the right side of the plaintiff was a belt, while on his left a bench and pile of the scrap iron or clippings, which it was his duty to remove from the bench as the plates were clipped. Back of him, and about ten feet away, was another bench and shears, being No. 10 in a row of such machines, that at which the plaintiff was working being No. 11. The floor of the room, including the space between the shear benches, was paved with brick. At the time of the accident, and while the plaintiff was in the position described, a buggy, with a load of black plate, was being hauled by the shearsman of No. 10 machine, from a pile of iron about eight feet distant from and to the back of the plaintiff, over said brick pavement to No. 10 shears. When the loaded buggy had gone a little distance and was directly opposite the boy, who was engaged at his work at the shears, with his back to the buggy, and about three feet away from the same, one of its wheels went into a hole or depression in the brick pavement, which caused the buggy to stop and the shearsman, who had hold of the tongue, commenced to work the same from side to side, while his helper pushed, in order to move the buggy on its way. Almost immediately, the buggy was overturned, and with its load of black plate, weighing about 1,500 pounds, fell upon the plaintiff and caused the injuries complained of.

The plaintiff testified that he did not know of the approach of the buggy, that he did not receive any warning of its coming, and that he never knew of any other buggy overturning, although there was other testimony tending to show that they had upset before on the same pavement. It was averred in the declaration that these injuries were sustained by reason of the negligence and carelessness of the defendant, in not providing a reasonably safe place in which to work, and in maintaining and using a carriage or buggy for the transportation of metal sheets or plates, so defective in construction as to be liable, when loaded, to upset by reason of its lack of stability; in other words, that the place in which the plaintiff was required to work by defendant, was not reasonably safe, by reason of the defects in the brick pavement between the No. 10 and No. 11 machines, over which such a buggy, loaded with metal plates, was required to be hauled with its unstable load. There was no testimony to contradict that of the plaintiff, that he had never been warned or cautioned as to any danger likely to arise from these passing buggies when so loaded. The testimony as to the condi-

tion of the pavement, and the instability of the buggies, when loaded, was conflicting. The plaintiff describes the pavement as being in exceedingly bad condition. He says that some of the bricks were up and some of them away down; that the holes were such that in one of them he had caught his foot and had difficulty in extricating it; that he had seen the buggy wheels go down into some of these holes or depressions, so that they would have to be pried out by a crowbar. Other witnesses spoke in a general way of the pavement being defective. The superintendent of the mill and others testified that it was in good condition.

The case was submitted to the jury, with a charge from the learned trial judge, and a verdict was rendered in favor of the plaintiff. Defendant's motion for judgment non obstante veredicto upon the whole record, was refused by the court, and the writ of error thereupon sued out by defendant brings before us, upon exceptions duly taken, the whole record, real and statutory. The assignments of error covered the refusal by the court below of the following requests and motion of the defendant:

First. That under all the pleadings in evidence in this case, the verdict must be for the defendant.

Second. That under all the evidence in the case, the risk to the plaintiff, of the irregularities of the surface of the floor of the mill, was a risk assumed by the plaintiff, and the verdict must be for the defendant.

Third. Motion for judgment for defendant, non obstante veredicto, upon the whole record.

Though the record shows that exceptions were taken to certain portions of the charge of the court, no assignments of error have been made thereon. We think, however, the charge as a whole was exceedingly fair to the defendant. The only questions are those raised by the first assignment of error:

1. It is contended that it is manifest from the testimony that the alleged negligence of the plaintiff in error was not the efficient cause of the accident. In support of this contention, we are referred to the testimony of the two witnesses who were working with the buggy that upset, and another who witnessed the falling thereof. This testimony was to the effect that, when the buggy wheel rolled into the depression in the pavement, the buggy and its load did not at once upset, but that the upsetting occurred after a workman, who had the handle, commenced to move the same from side to side, pulling, while his assistant was pushing, in order to get the buggy started out of the depression: defendant's contention being that it was the effort made to get the wheel of the buggy out of this depression, by moving the handle violently from side to side, while pulling, that caused the load to topple and the buggy to upset. Or, in the words of counsel, "that for all that the hole in the floor had to do with this accident, the buggy might have remained upright forever," and that it was this alleged careless handling of the buggy, without waiting for the proffered assistance of another workman who was approaching, that caused the accident, and this alleged carelessness being that of a fellow workman, no recovery could be had by the plaintiff.

Undoubtedly the burden of proof was upon the plaintiff to show that the negligence complained of was the proximate cause of the injury. The question of proximate cause is likely to lead us into undue refinements and subtlety of disquisition, if we do not guard ourselves therefrom, by taking a common sense view point from which to consider the happenings of ordinary and everyday life. The varying circumstances of each particular case make it difficult, if not impossible, to lay down any general rule, or establish any test, by which the legal proximate cause of an event may be distinguished from the remote cause that is outside of legal cognizance.

Mr. Justice Strong, in delivering the opinion of the Supreme Court in the case of Milwaukee, etc., Ry. Co. v. Kellogg, 94 U. S. 469, 474, 24 L. Ed. 256 makes the following observations, which are pertinent and helpful in this connection:

"The true rule is, that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it. The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied to the other end, that force being the proximate cause of the movement, or as in the oft-cited case of the squib thrown in the market place. 2 Bl. Rep. 892. The question always is, was there an unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? It is admitted that the rule is difficult of application. But it is generally held, that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"We do not say that even the natural and probable consequences of a wrongful act or omission are in all cases to be chargeable to the misfeasance or nonfeasance. They are not when there is a sufficient and independent cause operating between the wrong and the injury. In such a case the resort of the sufferer must be to the originator of the intermediate cause. But when there is no intermediate efficient cause, the original wrong must be considered as reaching to the effect, and proximate to it.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"In the nature of things, there is in every transaction a succession of events, more or less dependent upon those preceding, and it is the province of a jury to look at this succession of events or facts, and ascertain whether they are naturally and probably connected with each other by a continuous sequence, or are dissevered by new and independent agencies, and this must be determined in view of the circumstances existing at the time."

Aided by those reflections, does it not seem clear that the chain of sequence is continuous and uninterrupted from the alleged negligence, in allowing these holes in the pavement to exist, to the upsetting of the buggy and the consequent injuries to the plaintiff? The suggested independent causation by the effort to extricate the buggy from the depression into which its hind wheel had rolled, was not independent causation in any proper sense, but a natural and to be expected consequence of the wheel rolling into the hole or depression in the pavement. There is nothing in the evidence to show that this effort was not a

natural one to be made under the circumstances, and such as it was, it was clearly occasioned by the alleged defect in the pavement, which was therefore, in a juridical sense, the efficient and proximate, and not the remote, cause of the accident. If, therefore, it should be determined by the jury that the existence of such defect in the pavement was due to the negligence of the defendant, the liability of the defendant is established, unless the risk occasioned thereby was one of the risks of the employment assumed by the plaintiff.

As we have said, the question of proximate cause depends so much on the facts and circumstances of the particular case, that it is hardly worth while to discuss those that have been cited by counsel, though most of them have been read and considered. Some notice, however, should be taken of the judgment of this court in the case of Kelly v. Jutte & Foley Co., 101 Fed. 955, 44 C. C. A. 274, cited and relied upon by the plaintiff in error. The Jutte & Foley Company, the defendant, being engaged in the construction of a bridge, employed Kelly, the plaintiff, to do certain work in and about that construction. Among the appliances to be used by the defendant in the work of construction, was a movable or shore derrick, the parts of which were in process of being put together. The carpenters engaged in this work had nearly completed it, but before the derrick had been fully made ready, they were interrupted in their work, and called away temporarily. Everything had been done, except boring holes in the cap log, upon which it was to rest, and inserting the proper bolts therein to hold it in place. These bolts, however, were at hand, and one of the carpenters was about to go for the augur to bore the holes, when the work was interrupted. This man told his foreman, who was a fellow servant with the plaintiff, that the cap log had not been made fast, and particularly called attention to the fact that this would render any present use of the derrick unsafe. Yet the engineer, early in the afternoon, started the engine and attempted to operate the derrick, with a full bucket attached. As the bucket could not be raised, the engineer was told by the foreman to increase the supply of steam. This was done, and the unfastened cap log was forced out of place. The derrick fell and its boom struck Kelly, who was seriously hurt. The contention was made on behalf of the plaintiff, that the defendant was negligent in providing an unsafe appliance with which the plaintiff was to work, inasmuch as his derrick was not properly fastened to the cap log. It was held by this court that the efficient cause of the accident was not the fact that, under the circumstances, the derrick was not bolted to the cap log, but the negligence of the foreman, plaintiff's fellow servant, in operating the derrick, with knowledge that it was not ready for use. It is obvious how different the facts in that case were from those in the case before us. The defendant was guilty of no negligence at all. The derrick was not intended to be used in its then condition. Skillful men were being employed in putting it together, and had not yet completed their task. The act of the foreman, who, with full knowledge, operated the derrick in this incomplete state, was not only an independent cause, but the sole legal cause, of the accident which ensued. Judge Dallas, in delivering the opinion of this court, among other things, said:

"The derrick was, it is true, set in motion when it ought not to have been, but that was done by a fellow servant; and this quite separate and distinct default, not the absence of the bolts from the cap log, was the proximate cause of Kelly's injury. 'In order to warrant a finding that negligence or an act not amounting to wanton wrong is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been forseen in the light of attending circumstances;' and obviously the harm which Kelly suffered was not the natural and probable consequence of the interruption of the work of the carpenters, and one which ought to have been foreseen as likely to flow from it. It resulted from 'a new cause, and a sufficient cause'—the premature and forced operation of the engine; and for that act the appellee was not, under any possible aspect of the case, responsible."

We think this language clearly distinguishes that case from the present one, and supplies, as nearly as is practicable, a test for determining what is or what is not a proximate cause in a juridical sense. In the case before us, there is no question as to the responsibility of the defendant for the use of the floor of his mill in its alleged defective condition, if defective it was, by the man who was hauling the buggy, nor that this man was doing what was to be expected of him under the circumstances. There was, therefore, testimony tending to show a perfect chain of causation connecting defendant's act with the injury done to the plaintiff. In such a case as this, the question of proximate cause is one for the jury.

2. The other contention of the defendant is that, admitting the floor to have been in bad condition, as testified to by the plaintiff, his own testimony shows that he appreciated and assumed the risk arising therefrom. Though it is perfectly well settled that one who enters the employment of another assumes the ordinary and obvious risks of that employment, and such latent and extraordinary risks as to which he has been informed, and with reference to which he is assumed to have made his contract of service, it is often difficult to apply that law, as we have before said in regard to the doctrine of proximate cause, to the facts of a particular case.

It may be remarked in passing, that risks due to the negligence of the master, are not to be included among the ordinary risks of the employment assumed by the servant. In order that the master may be relieved from liability in such cases, it must be made affirmatively to appear, not only that the situation brought about by neglect of any of the primary duties owing by the master to the servant, is apprehended by the latter, but also that the particular danger arising therefrom is appreciated by him. That the uneven and defective condition of the pavement, if it existed, was known to the plaintiff, he himself admits, but he also testifies that he was not aware of any danger likely to arise therefrom to himself, nor was he warned or cautioned in that respect by any one. There was evidence tending to show that this special danger arising from the unevenness of the pavement, had made itself manifest on several occasions prior to the plaintiff's employment, by the upsetting of the buggy, with its load, when rolling into a depression in the floor of the mill. In addition to this, the jury were warranted, in coming to a determination as to the assumption of risk, in considering the plaintiff's youth and inexperience, as bearing upon the question

of his appreciation of the danger. We do not think the state of the evidence, as disclosed by the record, would have warranted the court below in withdrawing this question from the consideration of the jury. This question, as well as that of the proximate cause and the primary negligence of the defendant, were all questions, in the state of the case as disclosed by the record, peculiarly for the determination of the jury.

The judgment below is therefore affirmed.