UNITED STATES v. PERLMAN.

(District Court, S. D. New York. December 21, 1917.)

1. GRAND JURY ⬡41—SECRECY.

After an indictment has been found, and defendant has been apprehended and has submitted to the jurisdiction of the court and been released on bail, there is no impropriety in inquiring of the grand jurors, or in their telling, what transpired before them.

2. CRIMINAL LAW ⬡627½—MINUTES OF GRAND JURY—INSPECTION.

The court may inspect the grand jury minutes to satisfy its own conscience; but the right should be sparingly exercised unless a strong case

⬡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

is made out, requiring examination in the furtherance of justice or for the protection of individual rights.

3. CRIMINAL LAW ☞627½—INDICTMENT AND INFORMATION ☞137(4)—QUASHING—INCOMPETENT EVIDENCE.

An indictment will not be quashed, or the minutes of the grand jury inspected to see what evidence there was, merely because of a showing that incompetent evidence was given before the grand jury; it being enough if there was any competent evidence.

4. CRIMINAL LAW ☞279—ABATEMENT—TIME OF PLEA.

A plea of abatement, filed 108 days after the filing of the indictment and the arraignment, there being nothing excusing the long delay, is not timely.

Prosecution of Louis H. Perlman by the United States. Heard on motion to strike out plea in abatement, and on motion to quash the indictment. First motion granted; second motion denied.

Francis G. Caffey, of New York City (Harold Harper, of New York City, of counsel), for the United States.

Silberberg & Davis, of New York City (Louis Marshall and A. A. Silberberg, both of New York City, of counsel), for defendant.

MANTON, District Judge. The defendant was indicted by the federal grand jury for the crime of perjury on July 20, 1917, and was arraigned on this day and pleaded not guilty, with leave to withdraw his plea and enter a demurrer. On August 8, 1917, he demurred to the indictment. On October 6, 1917, a motion to quash the indictment was served, based on the ground of insufficient evidence before the grand jury. On November 1, 1917, an order was filed overruling the motion to quash. On November 5, 1917, a plea in abatement was filed, and on November 7, 1917, a second motion to quash was served.

We have for consideration now a motion by the government to strike out the plea of abatement, upon the ground that it is not timely; also for determination the second motion to quash the indictment.

The defendant's perjury is alleged to have been committed while a witness in behalf of the Perlman Rim Company in a litigation instituted by it, over a patent, against the Firestone Tire & Rubber Company. The indictment charges:

"And the said Louis H. Perlman being duly sworn, as aforesaid, it then and there upon the trial of the said issue became and was a material matter and inquiry whether or not the said Louis H. Perlman has been and stopped in London, England, in the year 1895, and had been there concerned with a syndicate known as the American Ocyzone Syndicate, and had been there arrested and charged with an offense in connection with the conduct by the said Louis H. Perlman and one Edward Ames Weber of the said syndicate, and an examination had been had before one Magistrate Bridge at the Bow Street Police Court, and the said Louis H. Perlman thereafter had been indicted for larceny and cheating under the British law in such connection, and had been put in jail for two months and had finally furnished bail, and whether or not the said Louis H. Perlman, having been arrested, charged, indicted, put in jail, and bailed as aforesaid, had fled his bail, and was then and there, that is to say, at the time of the trial of the suit of Perlman Rim Corporation against Firestone Tire & Rubber Company, Incorporated, as aforesaid, a fugitive from justice, and whether or not the said Louis H. Perlman remembered, recollected, and recalled the aforesaid occurrences and events."

And it is further charged that as a witness in said case he swore falsely and corruptly, knowingly, and willfully, contrary to such oath, in substance that he did not remember, recollect, or recall whether or not he had stopped in London, England, in the year 1895, or whether or not he had been concerned in the syndicate known as the American Ocyzone Syndicate, or whether or not he had been there arrested and charged with an offense in connection with the conduct of said Louis H. Perlman, or whether or not an examination was had before Magistrate Bridge in the Bow Street Police Court, and there charged with larceny and cheating under the British law in such connection, and whether or not he spent two months in jail and finally was released on bail, and whether or not he thereafter fled his bail, and whether or not he was a fugitive from justice; the indictment charging further that he had knowledge of these occurrences.

The claim of the defendant is one Martin W. Littleton was called as a witness before the grand jury and gave testimony, which concededly is hearsay, which in substance was that he had heard or was told that somebody said that the defendant stated, in reference to the alleged facts which form the basis of the perjury charge, that the Firestone suit was not being tried fairly and that the Firestone people were trying to rake up old history, and it is claimed that this reference to old history is the sole basis for the identification of the defendant as the man who figured in the criminal prosecution in the London court.

It is claimed that the identification, one of the necessary links of the chain of accusation against the defendant, is predicated upon hearsay and illegal evidence, in that the testimony given by Mr. Littleton is the sole testimony as to the identification, and therefore the motion to quash the indictment should be granted. The affidavit of Mr. Odger is support of the motion to quash sets forth the source of information upon which the claim is based as the only evidence of identification of the person before the grand jury, and states that four of the grand jurors told him that there was no evidence of identification other than that given by Martin W. Littleton which has been referred to. The only evidence submitted in opposition is the affidavit of the assistant United States attorney, who says that the statement of what occurred in the grand jury room is not a true or correct statement. He does not state, however, what was the evidence before the grand jury, taking the position that he is not at liberty to do so because of the secrecy of the proceeding before that body.

[1] At the outset it might be observed that there was no impropriety in interviewing the grand jurors, or in the grand jurors telling what transpired if they recollected it. This information was solicited and obtained after the indictment was found, and the defendant apprehended and submitted to the jurisdiction of the court and his release upon bail. In discussing this question in Atwell v. U. S., 162 Fed. 97, 89 C. C. A. 97, 17 L. R. A. (N. S.) 1049, 15 Ann. Cas. 253, Judge Dayton said:

"But does this policy require secrecy as to the evidence adduced before the grand jury after such jury has made its presentment and indictment, publication thereof has been made, the grand jury finally discharged, and the de-

fendant is in custody? We think not. * * * What reason, therefore, can exist why the grand jurors, under such conditions, should be bound to secrecy? We can see none; and for these reasons we hold this fourth obligation of the grand juror's oath to require secrecy only so long as the policy of the law requires, and that that policy does not require it, so far as the evidence adduced before the grand jury is concerned, after presentment and indictment found, made public, and custody of the accused had, and the grand jury finally discharged."

[2] Further, the claim that there may not be an inspection of the grand jury minutes by the court, to satisfy the conscience of the court, is without merit. The right to inspect the grand jury minutes has been accorded to defendants where sufficient reason appears therefor, and this under the common-law practice, or in the absence of statute on the subject. Judge Learned Hand, writing in U. S. v. Violon (C. C.) 173 Fed. 501, refused to inspect the minutes of the grand jury on an application there; but I take it that must be applied to the particular facts involved in that prosecution. He recognized the authority of United States v. Kilpatrick (D. C.) 16 Fed. 765, but refused to follow it, observing:

"Of course, a case of misconduct within the grand jury room, as the use of liquors, or the like, might raise a very different question."

In this language he recognized the right of the judge to inspect the grand jury minutes to satisfy his own conscience, and it is not an authority against the right of the court to inspect the minutes. This right, however, should be sparingly exercised, unless a strong case is made out requiring examination of the minutes in the furtherance of justice, or for the protection of individual rights. As Judge Sanborn pointed out in McKinney v. United States, 199 Fed. 34 (117 C. C. A. 403):

"The grand jury is the organ of the court, subject to its jurisdiction and direction, and it is one of the legal duties of the court to see that its acts and findings accord with and are not in violation of the Constitution and the law. The Constitution and the law are superior to the theoretical secrecy of the proceedings of the grand jury, and courts should never permit the latter to induce, protect, or perpetuate violations of the former, or private or public wrongs."

While judges in the past have not been inclined to favor applications by defendants for inspection by them of the grand jury minutes, where good reason is shown in support of such motion, it should be granted. U. S. v. South Mayd, 6 Biss. 321, Fed. Cas. No. 16,361; U. S. v. Kilpatrick (D. C.) 16 Fed. 765; People v. Molineux, 27 Misc. Rep. 60, 57 N. Y. Supp. 936; People v. Glen, 173 N. Y. 395, 66 N. E. 112.

[3] Here, however, sufficiently strong reasons are not advanced to warrant the inspection of the grand jury minutes by the court, or to permit the defendant to inspect them. Assuming all that is set forth in the affidavit and petition of the defendant, it is not clear that there was no legal evidence to support the indictment. The hearsay evidence of Martin W. Littleton was not competent. Though defendant showed there was a reading of the minutes of the Firestone suit (and that of itself may have afforded a sufficient basis for the finding of the indictment), it is not stated what appeared in the minutes. The minutes might contain sufficient evidence to justify a conviction of the grand

jury that the testimony given by the defendant was false. The answers, "I don't remember," given by the defendant, may have been sufficient for the grand jury, so as not to require evidence of identification. A man who can remember so minutely the incidents in connection with his invention 14 years ago should undoubtedly remember whether or not he was in jail for 2 months 22 years ago, or whether he was in London and escaped therefrom as a fugitive from justice. This showing is not of sufficient strength to warrant an inspection of the minutes of the grand jury, or to quash the indictment on defendant's motion. The law is well settled that an indictment is not vitiated by the fact that incompetent evidence was given before the grand jury, if there was any competent evidence upon which an indictment might have been found. And it is not for the court to inquire into the sufficiency of the evidence. Holt v. U. S., 218 U. S. 245, 31 Sup. Ct. 2, 54 L. Ed. 1021, 20 Ann. Cas. 1138; U. S. v. Rintelen (D. C.) 235 Fed. 787; McKinney v. U. S., 199 Fed. 25, 117 C. C. A. 403; Chadwick v. U. S., 141 Fed. 225, 72 C. C. A. 343.

In addition thereto, it appears that the defendant made an application to quash the indictment before Judge Ervin, and this was denied on November 1, 1917. The only additional information here is the affidavit which sets forth statements made to the affiant by grand jurors, and this chain lacks probative force and would not justify my doing other than Judge Ervin did, in denying the application.

[4] As to the motion to strike out the plea in abatement, it should be granted. It was not timely made because not filed until 108 days after the filing of the indictment and the arraignment which took place on the same day. There is nothing in the plea of abatement, nor in the argument of counsel now, which would justify the exercise of discretion by the court in excusing this long delay. Delays less flagrant were held inexcusable in the following cases: Agnew v. U. S., 165 U. S. 36, 17 Sup. Ct. 235, 41 L. Ed. 624; Hyde v. U. S., 225 U. S. 347, 32 Sup. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A, 614; U. S. v. Rintelen (D. C.) 235 Fed. 787.

The plea in abatement has been referred to by the writers and the courts in the past as a dilatory plea, and it has been ruled that it must be filed promptly. Moffatt v. U. S., 232 Fed. 522, 146 C. C. A. 480. A refusal of the court to rule upon a plea in abatement, where there was a delay of seven months, was held no abuse of discretion in Matters v. U. S., 244 Fed. 736, —— C. C. A. ——.

For these reasons, the motion to strike out the plea in abatement must be granted, and the motion to quash the indictment denied.