## UNITED STATES v. SILVERTHORNE et al.

(District Court, W. D. New York.   March 31, 1920.)

No. 2031.

1. **Indictment and information** ⟨⟶137(4)—**May be quashed where only evidence before grand jury was incompetent.**

   Though the grand jury's investigations are inquisitorial and ex parte, they must be based on competent and sufficient evidence, and where the evidence is utterly insufficient, or palpably incompetent, the indictment should be quashed.

2. **Criminal law** ⟨⟶627½—**Grand jury minutes may be inspected in proper cases.**

   While inspection of the grand jury minutes to sustain a claim that the evidence was insufficient and incompetent is rare, the right can be exercised where the affidavits on motion to quash indicate that the grand jury considered merely hearsay or incompetent evidence, that amounted to insufficiency of proof of material matters or show an invasion of constitutional rights.

3. **Indictment and information** ⟨⟶140(2)—**Affidavits held to show competent evidence before grand jury.**

   Affidavits in support of and opposed to motion to quash indictment *held* to show that there was competent evidence from which the grand jury might infer conspiracy to defraud United States by false invoices of lumber shipments.

4. **Criminal law** ⟨⟶321—**Indictment presumed to be based on lawful proof.**

   An indictment imports verity, and, until impeached, is presumed to be based upon lawful proof.

5. **Conspiracy** ⟨⟶47—**Established by acts of conspirators from which mutual understanding is inferable.**

   The common design which is the essence of conspiracy may be shown by proof of different acts by various actors, from which a mutual understanding may be inferred.

---

⟨⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**6. Indictment and information ⬤⟿140(2)—Inferences from or explanations of evidence before grand jury not considered.**

On motion to quash an indictment, because the evidence before the grand jury was insufficient, it is not necessary to examine the inferences drawn by the grand jury from the evidence before them, or to consider explanations in defense.

**7. Searches and seizures ⬤⟿7—Protection against unlawful seizure is personal.**

Const. Amend. 4, protecting against unreasonable searches and seizures, confers an individual right, so that, where the person whose books were unlawfully seized did not object to the seizure, but testified voluntarily, others could not object to the evidence thereby secured, because the search was unlawful.

**8. Criminal law ⬤⟿627½—Indictment and information ⬤⟿138—Motion to quash and to inspect grand jury minutes must state witnesses' names.**

It cannot be presumed that information as to the names of witnesses who appeared before the grand jury was unlawfully acquired, and the indictments will not be quashed, nor the grand jury minutes inspected, where the motion therefore does not show that the names of the witnesses were acquired as a result of the unlawful search.

**9. Indictment and information ⬤⟿138—Illegal evidence before other grand juries does not require quashing.**

The fact that witnesses examined before other grand juries testified that at such examination books and papers unlawfully seized were exhibited does not require quashing of indictment, on a motion which does not charge that such books and papers were exhibited to the grand jury which found the indictment.

**10. Grand jury ⬤⟿33—Evidence procured only through illegal seizure is incompetent.**

The testimony of any witness, which was possible or procurable only because of an illegal seizure of defendant's books and papers, is incompetent before the grand jury.

**11. Criminal law ⬤⟿627½—Inspection of grand jury minutes should not be lightly granted.**

The inspection of the grand jury minutes, which would disclose to defendants the evidence of the government, should not be granted, unless it becomes reasonably clear that illegal evidence has been used to procure the indictment.

Asa K. Silverthorne and others were indicted for conspiracy to defraud the United States. On motion to quash the indictment and for inspection of the minutes of the grand jury. Motion denied.

See, also, 265 Fed. 859.

Stephen T. Lockwood, U. S. Atty., of Buffalo, N. Y. (John W. Ryan, of Buffalo, N. Y., of counsel), for the United States.

Henry W. Killeen, James O. Moore, and Ernest W. McIntyre, all of Buffalo, N. Y., for defendants.

HAZEL, District Judge. This is a motion to quash the indictment (No. 2031) on the ground that the evidence before the grand jury, upon which it was based, was insufficient and incompetent, or, in the alternative, for an inspection of the minutes of the grand jury, and, if inspection and examination are allowed, that the various questions raised by this motion be reserved to the hearing on the plea in abatement, filed herein, to which no replication has as yet been served by the government.

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1] It is well understood that inquiries into crimes by a grand jury are inquisitorial in their nature, and by ex parte investigations the grand jury is required to find an indictment whenever the evidence before them, taken together, is sufficient, if unexplained and uncontradicted, to warrant conviction by the trial jury. Such investigations must be based upon proper evidence, competent and sufficient evidence, and the weight of the authorities bearing upon the right of review by the court of the action of the grand jury is to the effect that it should be had only in a clear case, where, for instance, a mistake has been made, or such irregularity in procedure charged, as would be prejudicial to the legal rights of the accused. The rule announced by Judge Wallace in U. S. v. Farrington (D. C.) 5 Fed. 343, is quite generally followed by the federal courts. He said in that case that in extreme cases only, when the court can see that the finding of the grand jury is based upon "utterly insufficient evidence, or such palpably incompetent evidence, as to indicate that the indictment resulted from prejudice, or was * * * in willful disregard of the rights of the accused," should the indictment be quashed. What transpired before the grand jury may be shown, no matter by whom, whenever it becomes essential to protect the individual rights of the accused, who has the constitutional right to insist that the indictment against him be based upon sufficient and competent legal proof.

[2] Inspection of the grand jury minutes to sustain the claim of insufficient and incompetent evidence before the grand jury is rare in the federal courts, and motions to quash indictments are usually based upon affidavits alleging facts as a basis for granting the same. The right of inspection, however, by the court, to satisfy his own conscience, was recently recognized in U. S. v. Perlman (D. C.) 247 Fed. 161. Nevertheless, it must be conceded that the decisions as to the power of the court to review the proceedings of a grand jury for the purpose of determining the character of the evidence before it, as to whether the evidence, in whole or in part, was illegal and to the prejudice of the defendant, are not altogether harmonious. In U. S. v. Rubin (D. C.) 218 Fed. 246, for example, the indictment was quashed by Judge Thomas on the ground that it appeared that the main witnesses had no personal knowledge of the facts to which they testified; they merely giving such information as they obtained by investigations. There are other adjudications giving strong reasons for holding that proceedings before the grand jury should not be reviewed, or its minutes inspected, for the purpose of ascertaining whether the indictment was based upon competent and legal evidence. U. S. v. Cobban (C. C.) 127 Fed. 713; U. S. v. Violon, 173 Fed. 501; McKinney v. U. S., 199 Fed. 25, 117 C. C. A. 403; U. S. v. Rubin (D. C.) 214 Fed. 507; U. S. v. Rintelen (D. C.) 235 Fed. 787. In Radford v. U. S., 129 Fed. 49, 63 C. C. A. 491, it was held to be a matter of discretion as to whether an indictment should be quashed on the ground that it was based on incompetent evidence of the essential facts before the grand jury. And see Holt v. U. S., 218 U. S. 245, 31 Sup. Ct. 2, 54 L. Ed. 1021, 20 Ann. Cas. 1138.

[3] If the affidavits before me indicated that the grand jury con-

sidered merely hearsay or incompetent evidence tantamount to insufficiency of proof of material matters, or showing an invasion of constitutional rights, I would feel that it was incumbent upon me, in view of the circumstances, to quash the indictment, and, if in doubt, to permit inspection of the grand jury minutes by the defendants. But, on carefully considering the facts set forth in the various affidavits read on this application, I am of opinion that no illegal evidence on important matters is shown to have been taken before the grand jury, and that the evidence was adequate to support the indictment. How stands the case as shown by the moving papers, which have not been disputed by the government (except as to the reply affidavit of the grand juror Fuller)? Is incompetent or illegal evidence disclosed, or an encroachment of the constitutional rights of the accused?

[4, 5] It is axiomatic that an indictment imports verity, and, until impeachment, the presumption is that it was based upon lawful proof. The indictment alleges that the defendant conspired to defraud the United States out of a large sum of money by fraudulent representations that quantities of lumber, consisting of grain door boards, had been delivered to the Lehigh Valley Railroad Company under sales contract, when in fact no such quantities of lumber were delivered. The common design, which is the essence of the conspiracy, may be shown by the doing of different acts by various actors, from which a mutual understanding may be inferred. Some of the participants may take a subordinate or insignificant part, while others take a more prominent part, to effectuate the unlawful purpose. The significance of the testimony often is not readily perceivable at first, and obviously in this case the grand jury was required to consider all the details indicating confederacy and overt acts, and to draw inferences therefrom.

According to the affidavits there was evidence that certain railroad cars containing shipments of grain boards were only partly loaded at the yard of the Silverthorne Lumber Company, Incorporated; that it was piled into the freight cars in a deceptive way (as the government claims); that money was paid as a bribe (so the grand jury evidently believed) by one of the defendants to a government inspector to make a false report. Car invoices were received in evidence showing the quantities claimed by defendants to have been delivered; and that piece tallies—fictitious tallies— were made by direction of Asa K. Silverthorne on figures furnished by him to an employé, from which the invoices were made out. It is quite conceivable that such testimony comprised important items leading to the belief that the invoices delivered to the railroad company were false, and that the government inspector assisted in effectuating the plan or scheme, though he swore the money was paid him for prompt unloading. The acts or writings of Silverthorne, Jr., and of the defendants Toby and Brick, employés of the corporation, presumably were acts in furtherance of the conspiracy, and testimony relating to their participation is inferable from the second affidavit of the grand juror Fuller.

[6] In the reply brief the deductions made by the government from the undisputed statements contained in the moving papers are criti-

cized, and it is contended that nowhere does it appear that any car was knowingly invoiced beyond the quantity of lumber contained in it; that the piece tallies related to the number of grain boards of variable sizes, but not to the number of feet of lumber in each car; and that, under the agreement, the railroad company was paying for the lumber by the board foot, and not for the number of pieces. But this court cannot say, with reference to any of these matters, that there was not sufficient evidence to support the indictment. It is not required to examine the inferences drawn by the grand jury from the evidence before them, or to investigate the nature of the evidence upon which they acted, or consider explanations in defense. In U. S. v. Perlman, supra, Judge Manton stated that an indictment is not vitiated by the fact that incompetent evidence was received before the grand jury, if there was any competent evidence to support the indictment, and, moreover, that it was not for the court to inquire into the sufficiency of the evidence.

[7] It is pressed with earnestness that using the defendant McConkey's books, vouchers, checks, and invoices relating to shipment of grain boards to the Lehigh Valley Railroad Company before the grand jury as evidence was the result of an unlawful seizure at his personal office at Tonawanda, N. Y., and the evidence thus seized was tainted by the violation of constitutional rights secured to all the defendants, which estopped the government from using such documents in any manner. The documents were not taken from any of the defendants moving to quash the indictment, and McConkey has not complained or taken any steps to have them restored to him, though the government has had possession thereof nearly a year. Weeks v. U. S., 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177. Indeed, he presumably has testified voluntarily before the grand jury and explained the books and invoices. Apparently there was a willingness on his part that the documents should be used as evidence against him and his codefendants.

It is argued, however, that the Fourth Amendment of the Constitution is subject to a different construction from the Fifth; that the words "the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures" must be collectively considered, as distinguished from the rights of the person or individual to constitutional protection; that the Fourth Amendment implies a right in which all the people are concerned, and any person aggrieved may complain of the violation. But this construction is deemed fallacious. It would not be logical or consistent. The rights guaranteed by both the Fourth and Fifth Amendments are expressly for the benefit of the person or individual whose rights have been invaded, and to transfer such rights to a person who may believe himself injured by a violation of the rights of another would give such scope to the Fourth Amendment as was never contemplated.

[8] It is next contended that there was evidence before the grand jury discovered from the illegal search and seizure of the books and papers of the Silverthorne Lumber Company, Incorporated, in that the names of the witnesses Pultz and Munro, its employés, were as-

certained by the government officials during the progress of the seizure, while the names of other witnesses were subsequently ascertained by the United States attorney from the book entries before the books were returned to the corporation under order of the court. It is said that the ascertainment of the names from the book entries during the progress of the seizure prevented the government from calling such persons as witnesses to testify before the grand jury. It does not appear that the names of witnesses were obtained or became known to the government from book entries or from any documents that may not have been returned, and regarding the ascertainment of the names of Pultz and Munro I am unpersuaded that their testimony should be rejected on the ground stated. It is not believed that an inspection of the grand jury minutes would disclose how the persons or their names were ascertained, and it cannot be assumed that the information was illegally acquired.

[9, 10] It is next urged that witnesses who were previously examined before other grand juries investigating charges against the defendants have sworn that at such examinations suppressed books and papers were exhibited. In this connection it is important to note that no claim is made on this motion of any suppressed documents before the grand jury which found the indictment under consideration, nor can it be assumed that the witness Munro was examined through information obtained from suppressed books and papers belonging to the Silverthorne Lumber Company, Incorporated, or from any information contained therein. If the testimony of any witness before the grand jury was made possible or procurable only by reason of such illegal seizure, condemned by the Supreme Court, or from knowledge gained by the government's own wrong, then, giving effect to the Supreme Court decision, any evidence thus obtained would be an invasion of constitutional rights. This indictment, however, is not shown to have been based on evidence obtained through the unlawful seizure. Inspection of the minutes, I conceive, would not establish this claim of the defendants.

[11] The plea in abatement, filed herein, but not at issue, avers various of these matters dehors the record, which in my opinion cannot be dealt with on this motion to quash. However, I think it would not be inappropriate for me to state that if, at any stage of the hearing on the plea, it should become necessary to examine the minutes in furtherance of justice, or to protect the constitutional rights of the accused, such inspection will be had by the court under the authority of U. S. v. Perlman, supra, and U. S. v. Gouled (D. C.) 253 Fed. 244. Until such time, however, it is well enough to have in mind that the evidence of the government should not lightly be disclosed to the defendants under order of the court, for the purpose of supplying them with weapons for their defense or apprising them of the evidence of the government to substantiate the charge. Indeed, disclosure of evidence should not be made unless it becomes reasonably clear that the illegal search and seizure has been diverted or used to the acquirement of evidence to support the offense.

The motions for quashing the indictment and for inspection of the minutes are denied.