**UNITED STATES of America,**
**Plaintiff,**

v.

**James R. FREELING, John J. Houlihan, and Martin Legere, Defendants.**

United States District Court
S. D. New York.
Nov. 26, 1962.

Vincent L. Broderick, U. S. Atty., S. D. N. Y.; by Thos. Day Edwards, Asst. U. S. Atty., for plaintiff.

O'Dwyer & Bernstein, New York City, for Houlihan.

EDELSTEIN, District Judge.

The defendants are charged in a thirteen count indictment filed May 17, 1961. The first two counts allege the use of the mails in furtherance of a scheme to

defraud, 18 U.S.C. § 1341 (1958).[1] Counts 3–6 allege use of interstate wire and radio facilities in furtherance of said scheme, 18 U.S.C. § 1343 (1958).[2] Counts 7–13 allege transportation in interstate commerce of stolen securities and monies, 18 U.S.C. § 2314 (1958).[3] In brief, the indictment alleges a scheme to defraud the Capitol Hill State Bank of Oklahoma City of approximately $1,-500.00 of cash and securities.

Stolen securities and cash were allegedly transmitted to New York by Houlihan and Freeling under a guise that the securities were to be retained by the defendant Legere's bank, the Grand Bahama Bank and Trust Company, for safekeeping. The scheme's *coup de grace*, it is alleged, was the conversion of these stolen assets to the defendants' personal use, and the defendants' subsequent use of the cash to purchase the controlling stock of the Capitol Hill State Bank.

*Sub judice* are motions by the defendant Houlihan, joined by the defendant Legere, to dismiss the indictment on

1. "§ 1341. Frauds and swindles

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Post Office Department, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both."

2. "§ 1343. Fraud by wire, radio or television

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both."

3. "§ 2314. Transportation of stolen goods, securities, monies, or articles used in counterfeiting

"Whoever transports in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud; or

"Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities, knowing the same to have been falsely made, forged, altered, or counterfeited; or

"Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce, any tool, implement, or thing used or fitted to be used in falsely making, forging, altering, or counterfeiting any security, or any part thereof—

"Shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

"This section shall not apply to any falsely made, forged, altered, counterfeited or spurious representation of an obligation or other security of the United States, or of an obligation, bond, certificate, security, treasury note, bill, promise to pay or bank note issued by any foreign government or by a bank or corporation of any foreign country."

A fourteenth count, charging each defendant with embezzlement of funds insured by the Federal Deposit Insurance Corporation, 18 U.S.C. § 656 (1958), was ordered stricken on November 8, 1962. The court's order striking the fourteenth count was consented to by the Government.

three grounds, i. e.,[4] (1) improper selection of the Grand Jury; (2) improper interrogation of the defendant Houlihan before the Grand Jury; and (3) defendant Houlihan's alleged immunity from prosecution pursuant to 12 U.S.C. § 1820 (d), as amended 12 U.S.C.A. § 1820(d) (Supp. 1962). In addition, Houlihan and Legere attack counts 3–6 which charge use of interstate wire and radio in furtherance of a scheme to defraud, as duplicitous and seek to have them dismissed. Finally, these two defendants move pursuant to Rule 21(b), Federal Rules of Criminal Procedure to transfer, "in the interests of justice", the trial to another district.[5]

 Before passing to consider the merits of these objections, the court must determine the threshold issue of whether or not these motions are timely made. The Government, before joining issue with the defendant on the merits of their claims, urges that the motions are "grossly untimely" and that they should be denied without a consideration of their merits. The Government relies

on Rule 12(b) (3), Fed.R.Crim.P., which requires that the motion attacking the indictment or the institution of the prosecution "shall be made before the plea is entered, but the court may permit it to be made within a reasonable time thereafter."[6] Failure to make a motion attacking the indictment or information before plea is entered or within the time period set by the court for making such objections results in a waiver of those objections unless the court, in the exercise of its discretion, grants the erring defendant relief from the waiver. See Notes of Advisory Committee, Rule 12 (b), 18 U.S.C.A.; Poliafico v. United States, 237 F.2d 97 (6th Cir. 1956), cert. denied, 352 U.S. 1025, 77 S.Ct. 590, 1 L.Ed.2d 597 (1957); Cleaver v. United States, 238 F.2d 766 (10th Cir. 1956); Scales v. United States, 260 F.2d 21, 44–46 (4th Cir. 1958), aff'd, 367 U.S. 203, 259, 81 S.Ct. 1469, 6 L.Ed.2d 782 (1959); United States v. Greater Blouse, Etc., Contractor's Ass'n., 177 F.Supp. 213 (S.D.N.Y.1959). A defendant seeking an adjudication of tardily made motions

4. Although the defendant Freeling originally joined in all motions, he expressly withdrew his joinder on oral argument. The defendant Legere has joined in the motion to dismiss because of improper grand jury selection, the venue motion, and the motion relating to the duplicity of the indictment.

5. Originally the defendants motion relating to venue was a motion to dismiss the indictment on the ground that venue was improper. 18 U.S.C. § 3237 provides that an offense begun or completed in one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed. The alleged offenses began in Oklahoma but the Hanover Bank in New York City was used as the depository as well as the conduit for the execution of the scheme. The illegal scheme was brought to fruition here. On oral argument, the defendants Houlihan and Legere, apparently realized that venue in the Southern District of New York was not improper, and switched the tenor of their attack from a motion to dismiss to a mo-

tion to transfer pursuant to Rule 21(b), Fed.R.Crim.P.

6. Rules 12(b) (2), 12(b) (3) Fed.R.Crim. P. provide: "Rule 12(b) * * *
"(2) *Defenses and Objections Which Must be Raised.*
"Defenses and objections based on defects in the institution of the prosecution or in the indictment or information other than that it fails to show jurisdiction in the court or to charge an offense may be raised only by motion before trial. The motion shall include all such defenses and objections then available to the defendant. Failure to present any such defense or objection as herein provided constitutes a waiver hereof, but the court for cause shown may grant relief from the waiver. Lack of jurisdiction or the failure of the indictment or information to charge an offense shall be noticed by the court at any time during the pendency of the proceeding.
"(3) *Time of Making Motion.*
"The motion shall be made before the plea is entered, but the court may permit it to be made within a reasonable time thereafter."

.has the burden of demonstrating that these motions are nevertheless made within a reasonable time because of the presence of special circumstances.

■ The defendants claim that because of special circumstances, which the court will consider *infra,* the motions should be deemed to be timely and should, therefore, be disposed of on their merits. In its deliberations on the question of timeliness, the court is not without guidelines. In this connection, an examination of the history of Rule 12(b) (3), Fed.R.Crim.P. and a review of its application by the courts is helpful.

The promulgation of Rule 12(b) (3) changed fundamentally the criminal motion practice in the Federal courts. Before the effective date of the Criminal Rules, motions attacking the indictment and alleging defects in the institution of the prosecution had to be labeled meticulously. Moreover, the motions had to be brought within specifically designated times. The most commonly used motions were the plea in abatement, the motion to quash, and the demurrer. The courts developed technical distinctions between these three pre-trial motions and the choice of the incorrect form could result in the denial of relief, often in meritorious cases. See Orfield, Pleadings and Motions Before Trial in Federal Criminal Procedure, 29 Fordham L.Rev. 1, 11–26 (1960); Preliminary Draft, Federal Rules of Criminal Procedure, pp. 51–65 (May 3, 1943). More specifically, an attack on the irregularity in the selection of the Grand Jury had to be raised by a plea in abatement or motion to quash and had to be filed within ten days after the defendant was arraigned.[7]

These niceties of common law criminal pleading and the inflexible time deadlines for raising defenses and objections were

eliminated by the Criminal Rules. By the abolition of demurrers, pleas in abatement, and pleas in bar, procedure was greatly simplified. All objections are now raised by motion. Judge Holtzoff, the Secretary to the Advisory Committee and a member of the subcommittee that drafted Rule 12, has described this change and has likewise stated the purpose of the new rule as follows:

"In order that they may not be used for dilatory purposes, the courts are granted power to determine when motions may be made. This discretion is vested in the district court by Rule 12(b) (3) which provides * * * The purpose of this limitation is to empower the District Court to bar the making of last minute motions, the purpose or the effect of which is to delay the trial."

See Holtzoff, A Criminal Case in the Federal Courts, pp. 11–12, Rules of Criminal Procedure and Criminal Code (West Publishing Co. 1960).

With these inflexible and antique distinctions of time and form thus abolished, Rule 12(b) (3) invested the district court with discretionary power to "permit" motions to be made within a reasonable time after the plea was entered. Notes of Advisory Committee on the Criminal Rules, Rule 12(b) (3), 18 U.S.C.A. The cases and comments cited by the Advisory Committee in its Notes, provided the district courts, during Rule 12(b) (3)'s infancy, with some measure of guidance relating to the exercise of this newly found discretion. The Committee's notes cited Moffatt v. United States, 232 F. 522, 529 (8th Cir. 1916), and Lowdon v. United States, 149 F. 673, 675 (5th Cir. 1906), with approval. In the Moffatt case the court held that a plea in abatement alleging illegal selec-

---

7. This statutory provision, relating to a 10 day post arraignment period for attacking the indictment because of alleged improprieties in the selection of the Grand Jury, formerly appeared as 18

U.S.C. § 556, 48 Stat. 648. This statute, and its time limitation was repealed and replaced by Rule 12(b) (3), Fed. R.Crim.P.

tion of the grand jurors, filed nine months after the filing of the indictment, was properly overruled as being untimely. In the Lowdon case, the objection to the Grand Jury selection was brought nineteen days after the indictment was filed and was considered too late. The Committee's selection of quotes from those cases emphasized that that discretion was to be exercised on the side of despatch and expeditious presentation of pre-trial objections. The committee, in discussing the matter of objections to the Grand Jury, stated that: "An objection of this kind [attacking Grand Jury selection] should be made at the earliest day that the defendant has an opportunity to make it." See United States v. Lowdon, supra, at 675; Moffatt v. United States, supra, at 529. In addition to this quote, the Advisory Committee also cited United States v. American Tobacco Co., 177 F. 774 (W.D.Ky. 1910) with approbation. In American Tobacco, a plea in abatement to the indictment, filed nineteen days after the indictment was filed, was overruled. In noting this case under Rule 12(b) (3), the Advisory Committee quoted the court as stating: "Another of * * * the rules applicable to such pleas requires the plea to be presented with the greatest promptness—general rules which are applied not merely to objections to the formation of the grand jury, but to all those matters of abatement which, in the technical sense, are dilatory and which even if sustained do not finally dispose of the subject matter of the indictment. Preliminary Draft, Rules of Criminal Procedure, supra, at 71; Unit-

ed States v. American Tobacco Co., supra at 777.[8]

The more recent expressions of the district courts with relation to Rule 12 (b) (3) conforms to the sense of the Committee that pre-trial motions are to follow the practice of prompt presentation unless unusual circumstances excuse punctual compliance. District courts have strictly applied Rule 12(b) (3) so that it now serves as an admonition against dilatory tactics in the presentation of pre-trial criminal motions. An example of a court applying the rule to promote expeditious disposition of pre-trial objections is found in Cleaver v. United States, supra, at 767, a prosecution for conspiracy and for burglarizing a post office. In Cleaver a plea of not guilty was entered on October 21, 1955, and the district court granted ten days after the entry of the plea to make motions to the indictment. On October 31, 1955, the defendant, having made no motions, moved for an extension of time which the district court denied. The Court of Appeals held that the district court did not abuse its discretion in denying an extension to make motions, particularly since defendants conceded that they had no specific grounds for requesting the extension. In Scales v. United States, supra, at 44–46, the court held that any defects in the empaneling of the Grand Jury had been waived by the defendant's failure to make his motion attacking the panel within a reasonable time after the date fixed by the court. The court also made an alternative holding that the defendant's objections were without merit. See Scales v. United States, supra, at 44–46.[9] In

8. The precursor of these cases was Agnew v. United States, 165 U.S. 36, 17 S.Ct. 235, 41 L.Ed. 624 (1896) where a plea in abatement to the indictment, alleging improper drawing of names for the Grand Jury, was considered to be untimely even though it was filed only six days after the indictment was filed. The Agnew case, as well as the Lowdon and Moffatt cases, also held that the sub- stance of the objections was without

merit and that therefore, the court's alternative holding as to the untimeliness of the motions did not prejudice the defendants.

9. In Scales v. United States, supra, the facts were as follows: On December 16 the defendant was given until January 14 to make certain pre-trial motions. He appeared on January 14 and requested sixty more days and obtained an ex-

Poliafico v. United States, supra at 110, a motion challenging the method of empaneling a grand jury was denied as untimely. The court explicitly stated, without looking to the merits of the defendant's claims, that such a motion must be made before the plea is entered or within a reasonable time thereafter. Counsel for defendants first made objection to the empaneling of the grand jury at the time the petit jury was being selected. And the decision in United States v. Greater Blouse, Etc., Contractor's Ass'n., 177 F.Supp. 213 (S.D.N.Y. 1959) is a further example of the use of the Rule in furthering punctual and expeditious disposal of pre-trial motions. In the Greater Blouse case, Judge Dimock ruled on defendant's motions for bill of particulars and discovery and inspection and also had before him a motion for leave to make further motions to the indictment. After emphasizing that the deadline which had been set for motions had been once extended by one week, Judge Dimock denied the request to make further motions by stating that "no cogent reason has been advanced why I should grant further permission at this time." Judge Dimock further stated that the mandate of Rule 12(b) did not permit "defendants to disregard a direction of the court that such motions in advance of trial be made on or prior to a certain date." United States v. Greater Blouse, Etc. Contractor's Ass'n., supra, at 228. Finally, in United States v. Campisi, 306 F.2d 308 (2d Cir. 1962), petition for cert. filed, 31 U.S.L.Week 3094 (Oct. 19, 1962) (No. 538). The Court of Appeals held that the district court did not abuse its discretion in denying, as untimely, a motion for severance made for the first time on the first day of the trial.

The rule of prompt presentation of pre-trial objections in criminal cases, so carefully developed by the Advisory Committee and so consistently applied by the courts, has been disregarded by these defendants and has been observed here only in the breach. The indictment was filed on May 17, 1961, and the defendants Houlihan and Legere entered pleas of not guilty on May 25, 1961, and May 26, 1961, respectively. On December 29, 1961, the parties were directed to be ready for trial at the end of February 1962. On January 31, 1962, Houlihan filed a prior motion to dismiss the indictment on the ground that it failed to state an offense, together with a motion for a bill of particulars. At the same time Houlihan requested "that the defendant's time for making of the motion * * * submitted be deemed enlarged." On March 2, 1962, Judge McGohey filed his opinion denying Houlihan's motion to dismiss and granted, in part, defendant's request for a bill of particulars. On October 16, 1962, the defendants Houlihan and Legere filed the present set of motions attacking the indictment. The exact date of filing is significant since the motions were made returnable on October 22, 1962, or just two days before the case was scheduled to be sent out for trial. More significantly, however, in terms of the reasonable time requirement of the Rule 12(b) (3), these motions were made eighteen months after the plea was entered and some seven months after prior motions had been denied.

Equally pertinent to the question of whether these motions are timely made is the fact that three other judges of this court have attempted to have the trial of this matter proceed with despatch, but to no avail.[10] None of the three target

tension to only February 18. He filed certain motions on February 18 and on March 15, for the first time, filed a motion attacking the indictment.

10. On December 29, 1961, Judge Mac-Mahon directed that all parties be ready for trial at the end of February 1962.

He set that period as a time certain for trial. A few days prior to March 1, 1962, Freeling's counsel became engaged in a protracted securities fraud case in which he remained until August 1962. In May 1962 Judge Palmieri adjourned the case until September 20, 1962, because of

dates fixed by other judges have been honored. On the last occasion Judge Dawson with all counsel present set October 24, 1962, to fix a date for trial, "with the understanding that it will go to trial about the first of November." That date has now long passed.

When the defendants' presently pending motions are viewed against this background of protracted delay, the Government's characterization of the motions as "grossly untimely" does not appear to be unfounded. Certainly these motions have not been made with the promptness and expedition that Rule 12(b) (3) contemplates. A time lapse of eighteen months after plea and a lag of seven months after a prior set of motions had been denied by Judge McGohey can hardly be termed a "reasonable" length of time.

Neither have the defendants provided the court with reasons which would excuse this inordinate delay. Nor have they persuaded the court that the motions are made within a reasonable time because of the existence of special circumstances. The reasons cited by Houlihan's counsel for this delay are as follows: (a) since being retained a great deal of work had to be done, such as interviewing witnesses in distant places in the Bahamas, Texas, and Florida; (b) the Federal Bureau of Investigation had investigated this case for a ten month period prior to the filing of the indictment in May 1961. Houlihan's attorney claims that the motions are filed within a reasonable time since it has taken them a similar ten month period from the time of their substitution in January 1962 to complete their investigation and preparation; (c) as to the motion to dismiss the indictment for improper grand jury selection, the information upon which this motion depends was not available until October 1962; (d) the motion to dismiss for improper

venue, which was transformed into a motion to transfer for the convenience of witnesses could not have been made without an extensive investigation of the facts; and (e) that the complexity of the issues required lengthy investigation to determine the merits of the motions.

In sum, the defendants' justifications for these late motions are that they are complicated and thus required extensive and time-consuming investigation. These reasons are hardly convincing as will readily appear from the court's brief discussion of the merits infra. The defendants' claims are so insubstantial and devoid of complexity that it is difficult to see why the proper preparation of these motions should have consumed even a small portion of the time that the defendants claim was required. And certainly the defendants' moving papers do not support their contention that such prodigious preparation was required or let alone made. The reasons given by the defendants are transparent. They afford no justification for this court to exercise its discretion in the defendants' behalf. The motions are untimely as they are not made within a reasonable time after the plea was entered. The motions are accordingly dismissed. See Rule 12(b) (3), Fed.R.Crim.P.

■ The defendants are in no way prejudiced by the dismissal of these motions as being untimely, since the motions lack merit and would be denied even if their merits were painstakingly explored. Defendants' contention that reliance on voter registration lists as a source of prospective grand jurors is not reasonably designed to produce a grand jury representative of the cross-section of the community was decided adversely to the moving defendants in United States v. Greenberg, 200 F.Supp. 382 (S. D.N.Y.1961), and United States v. Van Allen, 208 F.Supp. 331 (S.D.N.Y.1962). The problem was given thorough and

the engagement of counsel. He stated on the record that it should be clearly understood that there would be an early fall

trial. On September 20, 1962, Judge Dawson adjourned the case until October 24, 1962.

**548**

searching consideration in both the Greenberg and Van Allen cases. The press release of the Mayor's Committee on Registration, which was submitted by Houlihan in support of this motion, cites statistics similar to those urged upon the courts in the Greenberg and Van Allen cases, but does not afford a basis for changing the course set by those well-reasoned opinions.[11]

■ There is also no merit to Houlihan's claim that he was improperly interrogated before the grand jury in that he was "tricked" into appearing as a witness and that he was not informed that he was a prospective defendant. By such "trickery", Houlihan asserts, he relinquished his constitutional right to remain silent and gave many self-incriminating answers. Houlihan's assertion in this regard is false. The court has made an *in camera* inspection of Houlihan's Grand Jury testimony and it is abundantly clear that after giving his name in re-

sponse to a question from the Assistant United States Attorney, Houlihan's potential status as a defendant was unequivocally explained to him. The Assistant United States Attorney informed Houlihan of his right to remain silent. Houlihan's waiver of the privilege against self-incrimination appears to be free, volitional and in no way induced by coercion or "trickery". See United States v. Cleary, 265 F.2d 459 (2d Cir.1959), cert. denied, 360 U.S. 936, 79 S.Ct. 1458, 3 L.Ed.2d 1548 (1959); United States v. Scully, 225 F.2d 113, 116 (2d Cir. 1955), cert. denied, 350 U.S. 897, 76 S. Ct. 156, 100 L.Ed. 788 (1956); United States v. Klein, 124 F.Supp. 476, 478 (S.D.N.Y.1954).

■ Equally unavailing to the defendant Houlihan is his claim that the indictment should be dismissed since he was provided with immunity by virtue of 12 U.S.C. § 1820(d), as amended 12 U.S.C.A. § 1820(d) (Supp.1962).[12] This sec-

11. The document submitted by the defendants in support of the motion to dismiss because of improper Grand Jury selection is entitled The Mayor's Committee on Registration. The document is a press release by the Committee dated October 9, 1962. The press release sets forth the registration rates on a borough, assembly district, and election district basis. The study group concluded that the lowest degree of registration occurs in areas of the city with a high proportion of low income, Puerto Rican, or Negro residents. But these conclusions, so similar to the findings in the Greenberg and Van Allen cases, demonstrate no more than the fact that the "low income minority groups" tend to register less than the middle income or high income groups. As in the Greenberg and Van Allen cases, such figures fail to show that there is a systematic exclusion of such persons or that the present system of grand jury selection is not reasonably designed to produce a representative cross-section of the community in the light of the practical means available. See Dow v. Carnegie Illinios Steel Corp., 224 F.2d 414 (3rd Cir. 1955) cert. denied, 350 U.S. 971, 76 S.Ct. 442, 100 L.Ed. 842 (1956).

12. "§ 1820. Administration of Corporation—Board of Directors use of mails; cooperation with other Federal agencies
* * * * *
"Enforcement of subpenas and orders
"(d) In cases of refusal to obey a subpena issued to, or contumacy by, any person, the Board of Directors may invoke the aid of any court of the United States within the jurisdiction of which such hearing, examination or investigation is carried on, or where such person resides or carries on business, in requiring the attendance and testimony of witnesses and the production of books, records, or other papers. And such court may issue an order requiring such person to appear before the Board of Directors or member or person designated by the Board of Directors, there to produce records, if so ordered, or to give testimony touching the matter in question; and any failure to obey such order of the court may be punished by such court as a contempt thereof. All process in any such case may be served in the judicial district whereof such person is an inhabitant or carries on business or wherever he may be found. No person shall be excused from attending and testifying or from

tion empowers the Board of Directors of the Federal Deposit Insurance Corporation to issue administrative subpoenas to officers and employees of insured banks in order to compel their testimony before the Board of Directors of the Corporation. A bank employee or officer who testifies at an administrative hearing before the Board is granted immunity from prosecution. The defendant Houlihan did not testify before the Board of Directors at an administrative hearing. Houlihan gave an oral deposition pursuant to subpoena in a civil action instituted by the Federal Deposit Insurance Corporation in the United States District Court for the Northern District of Texas and therefore was not entitled to receive immunity from prosecution under 12 U.S.C.A. § 1820(d).

█ The defendants' claim that the trial should be transferred to another district "in the interests of justice," pursuant to Rule 21(b), Fed.R.Crim.P., is also without merit. Defendants have made no showing how a trial in this district would prejudice them. Moreover, they have not even suggested to the court another district in which the trial of the indictment would be more convenient. And since the indictment alleges that the offenses were completed here by the use of the facilities of a New York City bank, venue is properly laid in the Southern District of New York pursuant to 18 U.S.C. § 3237 (1952).

█ Finally, the defendants move to dismiss counts three through six, which charge a scheme to defraud by use of interstate wire facilities, 18 U.S.C. § 1343. More specifically counts three to six charge that separate wire transfers of $724,000, then $250,000, then $360,000,

and finally $100,000 were made in furtherance of the scheme to defraud. The defendants claim that there is one scheme alleged and only "one victim affected," the Capitol Hill State Bank. Consequently, they claim that, unlike the mail fraud statute where each mailing is a separate offense, the wire fraud statute gives rise to one offense only no matter how many transmissions are made.

It is difficult to fathom how, on the one hand, several mailings to further a scheme to defraud constitute several crimes, while, on the other hand, several transmissions by wire, in furtherance of the same scheme, constitute only one crime. See Nelson v. United States, 178 F.2d 458 (9th Cir.1949). If the defendants' conception of fraud by wire,—as a single crime no matter how many transmissions are involved—were to be accepted, it would encourage the use of the speedier telegraph, telephone, radio and television facilities as vehicles for fraudulent schemes. Congress could not have intended such an anomalous result.

Furthermore, by well established canons of statutory construction statutes which use identical words in the same sense are to be construed in *pari materia*, or with reference to one another. See 2 Sutherland, Statutory Construction, §§ 5201 et seq. (Horack ed. 1943). Both statutes under consideration contain the phrase "for the purpose of executing such scheme." Consequently, since it has been held that each mailing pursuant to an illegal scheme is an "execution" of the scheme and constitutes a separate offense, each transmission by wire should also give rise to a separate crime if those transmissions are in "execution" of the illegal scheme. See United States v.

producing books, records, or other papers in obedience to a subpena issued under the authority of this chapter on the ground that the testimony or evidence, documentary or otherwise, required of him may tend to incriminate him or subject him to penalty or forfeiture; but no individual shall be prosecuted or subject to any penalty or forfeiture for or on ac-

count of any transaction, matter, or thing concerning which he is compelled to testify or produce evidence, documentary or otherwise, after having claimed his privilege against self-incrimination, except that such individual so testifying shall not be exempt from prosecution and punishment for perjury committed in so testifying.

Sampson, 31 U.S.L.Week 4017 (U.S. Nov. 20, 1962).

The motions are denied.

So ordered.